CHARLES E. BLAKESLEE v. THE CONSOLIDATED STREET RAILWAY COMPANY.

*Street railways- Collision with vehicle—Contributory negligence.*

1. It is negligent to go upon a street-railway track without taking some precautions to ascertain whether or not it is safe to do so; and a person cannot avoid the legal effect of such negligence by placing himself in a position where he cannot easily see an approaching car; citing *McGee v. Railway Co.*, 102 Mich. 107; *Fritz v. Railway Co.*, 105 Id. 50.

2. In an action against a street railway company for injuries received by one of its cars striking the load of barrels in front of which the plaintiff sat at the time of the collision, the

evidence showed that the plaintiff occupied a position from which he could not see what was behind without moving to the edge of the load; that, without doing so, he turned his horses upon the track, to pass a vehicle, and was struck, as already stated. The testimony as to the distance between the wagon and the approaching car varied. And it is held that whether or not this negligence contributed to the injury complained of was a question for the jury; that, if there was an intentional or wanton running into the load of barrels by the motorman, after discovering plaintiff's perilous position, there would be room for the application of the doctrine that the negligence of the plaintiff was not contributory, but if that element was lacking, and the accident involved only a want of ordinary judgment, prudence, or care, there is no room for it.

3. The following general propositions are summarized from the opinion of Mr. Justice HOOKER:

*a*—That in a crowded thoroughfare, where there are four tracks upon which street cars are passing at intervals of four minutes, caution is necessary upon the part of all who use the street; that whether an accident is caused by the neglect of one or two parties must usually be a question of fact where the witnesses do not agree as to material circumstances.

*b*—That the use of electric cars involves, as it was intended it should, rapid transit; that more or less time is required to stop them; that they have the right of way, within reasonable bounds; that other travelers, by ordinary methods, owe the duty of making way for them without unnecessary or unreasonable delay; that, of necessity, ordinary vehicles must be permitted to drive upon and across the tracks when the cars are at a reasonably safe distance, and the railway company is in duty bound to keep a sharp lookout, and use prompt measures to prevent accidents when danger threatens, but persons should not pass upon a track without using some precaution to ascertain whether danger is imminent.

Error to Kent. (Adsit, J.) Argued January 10, 1895. Decided May 28, 1895.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Kingsley & Kleinhans*, for appellant.

*Earle & Hyde,* for plaintiff.

HOOKER, J. The plaintiff, while driving a team attached to a load of barrels on a narrow street, turned his team upon the track of the defendant's trolley road, to pass a carriage standing by the roadside. As the front wheel of the wagon was brought upon or near to the westerly rail of the track, the load was struck upon the side, near the front, by defendant's car, whereupon the plaintiff's team ran away, and he was injured. He recovered a verdict in an action for negligence, and the defendant has appealed. The principal questions raised arise over the claims of defendant's counsel that (1), plaintiff's contributory negligence conclusively appeared; (2), if not, the court erred in his instructions to the jury upon that subject.

The evidence showed that the plaintiff sat in front of his load of barrels, which was 28 feet long, and 12 to 14 feet wide at the top, and that he occupied a position from which he could not see what was behind without moving to the edge of the load; that, without doing so, he turned his horses upon the track, to pass a vehicle, and was struck, as already stated. The testimony varied as to the distance between the wagon and the approaching car, one witness putting it about 100 feet; others, as low as 10 or 15 feet. It is contended that the evidence demonstrates the proposition that the car must have been so close when the plaintiff turned upon the track that it could not be stopped, and therefore that it should be held, as matter of law, upon established facts, that the plaintiff was negligent in turning upon the track in front of a rapidly approaching car, and that the defendant was not negligent.

We are unable to say that the evidence is conclusive in this regard. In a crowded thoroughfare, where there are four tracks upon which cars are passing at intervals of four minutes, caution is necessary upon the part of all who use the street; and whether an accident is caused

by the neglect of one or two parties must usually be a question of fact where, as in this case, the witnesses do not agree as to material circumstances. The use of electric cars involves, as it was intended it should, rapid transit. More or less time is required to stop them. They have the right of way, within reasonable bounds; and other travelers, by ordinary methods, owe the duty of making way for them without unnecessary or unreasonable delay. Of necessity, ordinary vehicles must be permitted to drive upon and cross the tracks when the cars are at a reasonably safe distance, and the railway company is in duty bound to keep a sharp lookout, and use prompt measures to prevent accidents when danger threatens. But persons should not pass upon a track without using some precaution to ascertain whether danger is imminent. The case of *McGee v. Railway Co.*, 102 Mich. 107, is a case in point. In that case a pedestrian looked in one direction, but not in the other, before stepping upon the track, when by doing so he would have seen the lights of the approaching car. In the more recent case of *Fritz v. Railway Co.*, ante, 50, it was held that one riding in a covered carriage, and thereby prevented from looking behind, could not recover against the street-car company, when he turned suddenly upon the track, in front of a car, and was injured. From these cases it appears that it is negligent to go upon a track without taking some precautions to ascertain whether it is safe, and that a person cannot avoid this by placing himself in a position where he cannot easily see an approaching car. The plaintiff did this thing; and if the car was so close that it can be said to have been an imprudent thing to do, if ordinarily prudent persons, knowing the whereabouts of the car, would not have thus turned upon the track, his act was negligent, and should preclude a recovery, if it contributed to the injury. The charge of the court seems to qualify this duty to look for an approaching car by making it depend

105 MICH.—30.

upon his convenience. After stating that he was not a trespasser upon the track; that the street-car company had only an easement, and had no exclusive right to travel upon its tracks; and that it was bound to take the same care in preventing collisions as the driver of a wagon,—he added:

"But the plaintiff would not have the right to drive into apparent danger, such as would be in the face of an approaching car, *if he knew, or could have reasonably ascertained, that fact, under the circumstances in which he was placed.*"

And again he said: "If, *under all the circumstances of the case, considering the wagon and rack that the plaintiff was using, the manner in which it was loaded, the place upon the rack where plaintiff was sitting,* the team he was driving, the obstruction in plaintiff's way (if you find that there was such an obstruction, and that he could not pass around it, without getting upon or near the track, within the space that would be occupied by a car thereon), taking these and all the other circumstances of the case, as they appear from the evidence, into consideration, if plaintiff was acting in the exercise of ordinary care, as a prudent and careful person, and was injured through the negligence of the defendant in not stopping its car or retarding its speed, if by so doing in a prompt, prudent, and careful manner, the injury to the plaintiff, if any, would be prevented, the defendant is liable in this action."

And again he said:

"The fact that plaintiff's wagon appeared to be on or within the line of the track, when struck, is not of itself conclusive evidence of negligence, for he had a right to be there, unless the car of defendant was at the time threateningly near to the part of the track where plaintiff was, *and he had, by the exercise of ordinary prudence, the means of knowing of the immediate approach of such a car.*"

"While it is lawful, and not negligence, to drive a wagon along upon the rail, or between the rails, of an electric street-railway track, when such part of the track is not in use by cars, and none are near the immediate vicinity, yet I charge you that it is negligence in the

driver of a wagon, after he has been traveling and going to the side of such street-car track, to turn his vehicle from the roadway by the side of the track, over and upon the street-car track, in front of a motor car, which is approaching from behind, and proceeding at a lawful rate of speed, in full view, *and could have been seen by the driver if he had looked out for it, and was so near by that the moving car will necessarily collide with the wagon, unless the motorman, by extremely prompt and vigorous action, at once takes quick measures to bring his car to a standstill within the shortest time possible.*"

He concluded his discussion of the question as follows:

"It is negligence to drive a wagon load of barrels in front of an electric car, which is only a few feet away, while the car is approaching from behind at its usual and lawful rate of speed, when there is not time for the wagon to clear the track and get out of the line of danger before the front end of the car would reach the wagon and come in contact with the load, unless the car is suddenly stopped; *that is, if the driver knew or could reasonably have ascertained that fact, under the circumstances.* If the plaintiff knew that a car was approaching near by, and only a few feet away, and at an ordinary rate of speed, just before he drove towards the track, it would be his duty to stop his team, and allow the car to pass; and under such circumstances, if he drove on the track in front of the car, this would be negligence on his part, and would prevent his recovery in this action."

In our opinion, this naturally tended to give the jury to understand that turning suddenly upon the track, in front of an approaching car, so close that a collision would necessarily ensue unless the motorman, "by extremely prompt and vigorous action," should prevent, would not be contributory negligence, unless the plaintiff knew that the car was only a few feet away, or unless he could reasonably have ascertained the fact from his seat in front of the barrels. In other words, the charge seems to imply that a man may place himself in any position that his convenience or the exigencies of his calling may require, and drive upon the

track, without taking correspondingly greater precautions than would be necessary if in an open wagon; relying upon the proposition that he has the same right there that the car has, and that the motorman is required to avoid the collision. The evidence shows that the plaintiff made no effort whatever to ascertain whether a car was coming or not. In the case of a covered milk wagon, this was held to be negligent, and the rule should be the same in this case.

Whether or not this negligence contributed to the injury is another question, which we cannot determine, it being for the jury. It was contended that it was a case of recklessness upon the part of the motorman. If there was an intentional or wanton running into the load of barrels, by the motorman, after discovering plaintiff's perilous position, there would be room for the application of the doctrine that the negligence of the plaintiff was not contributory; but if that element was lacking, and the accident involved only a want of ordinary judgment, prudence, or care, there is no room for it. Doubtless, the use of streets for cars is an inconvenience to other travelers. We should hardly recognize the common experiences of ordinary life, did we not understand that mutual annoyance and friction to and between those who operate cars and other vehicles is to be expected, and that wanton and intentional injuries are possible, as are unnecessary detentions of cars by willful teamsters. But they are not to be presumed, and, unless there is some tangible evidence that a collision is intentional or wanton, a jury should not be permitted to so find. We do not intend to imply that there was or was not such evidence in this case. It is alluded to because it is made a prominent subject of discussion in the briefs of counsel, from which we infer that it is considered an important question in the case.

The judgment should be reversed, and a new trial ordered.

GRANT and MONTGOMERY, JJ., concurred with HOOK-
ER, J

McGRATH, C. J. (*dissenting*). Plaintiff was driving
south on the west side of Canal street, in the city of
Grand Rapids, when his wagon was struck by one of
defendant's electric cars, which was also going south.
Canal street is but 68 feet wide from curb to curb,
and defendant has four tracks in that part of the street.
The outside rail of the west track is 17.45 feet from the
curb, and the cars projected 20 inches beyond the track,
leaving but about 15 feet between the car and the curb.
Plaintiff turned into Canal street from West Bridge
street with a load of 100 empty cracker barrels, which
was from 12 to 14 feet in width at the top. He was
seated on a board in the center of the front end of the
load, his head being 17 inches below the top of the bar-
rels. The car came into Canal street from East Bridge
street. Plaintiff had driven some distance on the west
side of the street, his load clearing the track. At the
point of the collision, several horses and vehicles were
standing at the west curb of the street, and plaintiff had
turned in upon the track to clear said vehicles, when
the car struck the side of his load a short distance from
the front. His horses took fright, and jumped to the
west, running away. Plaintiff was thrown from his seat
down upon the running horses, and injured. Plaintiff's
horses were walking. The off horse was afraid of the
cars. Plaintiff testified that he did not know of the
presence or proximity of the car until the collision, and
that his horses gave no sign indicating the approach or
presence of the car. The testimony as to whether a bell
or gong was sounded by the motorman, as to the speed
of the car, as to the care exercised by the motorman, as
to whether plaintiff had just turned towards the track,
or was in the act of leaving the track, and as to what
the distance was between the car and the wagon when

plaintiff first turned upon the track, was conflicting. The declaration alleges—

"That after the said plaintiff had so driven the said team towards the said track, and the said team and wagon was partially upon said track, and within the line of a car moving thereon, the said defendant, by its servants and agents, drove and propelled a car along the said track, as aforesaid, southward from Bridge street to the point aforesaid, in violation of its duty aforesaid, at a high rate of speed, in a careless and reckless manner, and without having the said car under control, and without giving said plaintiff time to move out of the way, and without warning to said plaintiff, drove and propelled the said car against the said wagon with great force; that, had the said defendant used due care and caution, and kept the said car under control, it might have seen the said team and wagon in the way, and might have lessened the speed of said car, and given said plaintiff time to move out of the way, and avoided the collision aforesaid."

Plaintiff insisted that, after he had turned upon the track, the car, at a rapid rate of speed, and without warning, came up behind him, and struck his load. Defendant contended that just before the collision the car was moving at a moderate rate of speed, parallel with the wagon, when plaintiff suddenly turned towards the track, notwithstanding the gong was being sounded at the time. Some of the testimony was to the effect that the car was running at a high rate of speed, and that plaintiff was upon the track when the car was 100 feet away. The court instructed the jury that—

"The plaintiff had the same right to travel upon that portion of the street occupied by the railway track as the railway company, save that it was his duty, when he should meet a car, to get off the track, and give the car precedence, or if on the track, and requested to get off, or he saw that it was necessary for him to get off to let the car pass, he should do so. He was not a trespasser upon the track, in any sense. The right of the railway in the street is only an easement to use the same in common with the public. It

has not an exclusive right to travel upon its tracks, and it is bound to use the same care in preventing a collision as the driver of a wagon or other vehicle. But the plaintiff would not have the right to drive into apparent danger, such as would be in the face of an approaching car, if he knew or could have reasonably ascertained that fact, under the circumstances in which he was placed."

"The fact that plaintiff's wagon appeared to be on or within the line of the track, when struck, is not, of itself, conclusive evidence of negligence, for he had a right to be there, unless the car of defendant was at the time threateningly near to the part of the track where plaintiff was, and he had, by the exercise of ordinary prudence, the means of knowing of the immediate approach of such a car. What would be threateningly near is for you to decide, as men of experience, taking all the facts, including the distance and the time in which a car can be stopped, into consideration. What is ordinary care and prudence is determined by the nature of the business in which the person in question is employed, and the risks attending it."

"If you find it is a fact that at the time the plaintiff turned the front end of the wagon over and upon the rail of the street-car track, if he did so at all, there was then a motor car in plain view, approaching the wagon from behind at a lawful rate of speed, and about 15 feet from the rear end of the wagon, and liable to come in contact with it, and also that the plaintiff could have seen this approaching car if he had looked out for it, then, under such circumstances, it would be negligence on the part of the driver to so turn his vehicle over and upon the rail of the street-car track, or within the line of danger, without looking; he cannot recover for the injuries he has sustained by the subsequent collision. It is negligence to drive a wagon load of barrels in front of an electric car, which is only a few feet away, while the car is approaching from behind at its usual and lawful rate of speed, when there is not time for the wagon to clear the track and get out of the line of danger before the front end of the car would reach the wagon and come in contact with the load, unless the car is suddenly stopped; that is, if the driver knew or could reasonably have ascertained that fact, under the circumstances. If the plaintiff knew that a car was approaching near by,

and only a few feet away, and at an ordinary rate of speed, just before he drove towards the track, it would be his duty to stop his team, and allow the car to pass; and under such circumstances, if he drove on the track in front of the car, this would be negligence on his part, and would prevent his recovering in this action."

"If you find that the car and wagon were running side by side, in the same direction, for some distance, with a space of two or three feet between them, then I charge you, as a matter of law, there can be no collision, if each adheres to its then line of travel, and also that in case of a collision, under such circumstances, the presumption of negligence is altogether against the driver of the wagon, and not against the motorman; the driver being able to deviate and depart from his adopted line of travel, while the motorman cannot do so with his car; that is, if the plaintiff knew the position that the car and wagon were,—side by side."

"It is not negligence for a motorman to run his car at a lawful and ordinary rate of speed, side by side with a load of empty barrels going in the same direction, where there is room enough for the car to pass the load of barrels; and in such case, if the upper part of the car grazes along and rubs against the ends of the barrels, because the load of barrels had approached nearer to the car than the load was when they had been going side by side, then the street-railway company is not presumed to be the one at fault for causing such a contact."

Plaintiff was driving along the street with a bulky load which filled the space between the car line and the curb. His person was concealed from view. Vehicles lined the curb in his path. It was not claimed that these vehicles could not be seen by the motorman. If the plaintiff was upon the track, and the motorman observed the situation in time to have slackened the speed of his car and brought it under full control, and did not do so, he was guilty of recklessness; and if he did not see the plaintiff he is chargeable with recklessness, for it was his duty to keep a lookout. The permission to run at a high rate of speed implies a high degree of care on the part of the street-car company. The use of the street by street-railway companies is a use in common with other

persons. The right of way accorded to them must be exercised in a manner consistent with other proper uses of the street. Persons properly using streets, and liable, because of close proximity to the tracks, to come in contact with cars, or liable, because of the presence of other vehicles, to turn upon the tracks, should be warned by proper signals of the approach of cars, and the car should be kept under control, especially when the driver of the vehicle is concealed from view, and not in a situation to observe the approach of the car. A motorman who is giving the usual cautionary signals might be justified in assuming that the caution would be observed, but in the absence of such signals, and especially in a case like the present, where the driver is not in a situation to observe the approach of the car, he is not justified in assuming that the driver will stop, or will not turn upon the track in his course, to avoid contact with other vehicles. The right of the driver of a vehicle to drive over or upon the tracks is not restricted, except in case of the approach or presence of a car. The right of the railway company in the street must be exercised with proper regard to other uses. While granted the right to maintain a given rate of speed, the exercise of that right is subject to the contingencies and conditions which arise from a concurrent use of the street. To hold it to be the duty of persons using streets in common with street-railway companies, under all circumstances, to stop and look and listen to ascertain whether cars are not approaching from the rear, would impose a serious burden upon such persons, and seriously interfere with other uses of the street. Many vehicles are so constructed that a view of what is approaching from the rear is entirely cut off. The duty of persons so conditioned, under circumstances where their presence cannot be readily seen, presents another question. The collision in the present case occurred in broad daylight. There was no reason why the situation could not or should not have been observed. One upon a street-railway track, under the circumstances

here presented, is not a trespasser, nor is he chargeable with negligence from the mere fact that it is a street-railway track, and that a car may approach from the rear. While he has no right, with knowledge of the presence of a car, to obstruct its passage, yet there may be cases where, having gained the track in the ordinary and necessary course of travel, without knowledge of the approach or presence of a car, his right is the superior one, until he has had a reasonable opportunity to give the way to the approaching car. All persons participating in the use of streets must, of necessity, submit to such interruptions as are inseparable from the joint use. A driver going upon a street-car track with full knowledge of the proximity of an approaching car may be guilty of such negligence as would preclude a recovery in case of a collision; and he may be chargeable with negligence if, in a position to ascertain, with reasonable diligence, whether or not a car is approaching from the rear, he fails to take the precaution. But, of necessity, he is, in many cases, not in a situation, by a simple turn of the head, to observe the approach of a car from the rear. He has, under such circumstances, in the absence of the warning which it is the duty of the motorman to give, a right to assume that some regard will be paid to his presence and environment. The rule that commercial railways impose an additional servitude upon highways is but a recognition of the fact that the incidents of such use are inconsistent with the concurrent use of such streets; but, if the rules that prevail respecting the crossing of commercial ways are to be applied to travel upon streets, there is no room for any distinction between the two classes of railways.

The court, upon the question of damages, instructed the jury that,—

"It is a question in determining which you have the right to take into account the sufferings and pain caused by the injury and wounds, the deformity caused thereby, and the humiliation which would

naturally follow by reason of such injury, the permanent (in so far as you find them to be permanent), annoyances resulting from the mutilation and crippling of the plaintiff. And you are also to take into account the extent it has injured the plaintiff and prevented him from following the ordinary pursuits of life,—of men in his position in life; the extent, in other words, to which the plaintiff is restricted in his choice of occupation, and limited in his ability to work, by the injuries."

The instruction is within the rule laid down in *Geveke v. Railroad Co.*, 57 Mich. 596; *Power v. Harlow*, 57 Id. 107; and *Sherwood v. Railway Co.*, 82 Id. 374.

As already intimated, the testimony was in conflict upon the material issues; and I do not think that there is such a preponderance in favor of the defendant's theory as would justify this Court in directing a new trial on the ground that the verdict is contrary to the weight of evidence.

The judgment should be affirmed.

Long, J., did not sit.