## YOUNG *v.* CITIZENS' STREET RAILROAD COMPANY.

[No. 17,957. Filed Oct. 13, 1896. Rehearing denied May 21, 1897.]

STREET RAILROADS.—*Special Verdict.—Contributory Negligence.*—A special verdict finding that plaintiff upon first approaching a track looked attentively for an electric street car, but saw none, although he saw for a distance of four hundred feet from him, and that he afterwards walked twenty-five feet beside the track without looking again, when he was struck by a car going at the rate of twelve miles an hour, and that there was nothing at any time to prevent his seeing and hearing, fails to show that plaintiff was free from contributory negligence. *pp. 56, 57.*

SAME.—*Person on Track must Look and Listen.*—One is guilty of contributory negligence in walking upon or attempting to cross an electric street railway track without looking and listening. *pp. 58–60.*

SAME.—*Injury to Person on Track.*—A person who is engaged in laying pipe for a gas company in a trench about three feet from the track of a street railway company, and, in performing his duties as an employe of the gas company, walks upon the track of the street railway company, will be regarded as an ordinary traveler, and is bound to the observance of ordinary care for his own safety. *pp. 60–62.*

NEGLIGENCE.—*When a Question of Law.*—Where the facts are undisputed, and the inferences which may be drawn from them are unequivocal and can lead to but one conclusion, the court will adjudge, as a matter of law, that there is, or is not, negligence. *pp. 62, 63.*

From the Hancock Circuit Court. *Affirmed.*

*J. E. McCullough, H. N. Spaan, R. A. Black* and *Christian & Christian,* for appellant.

*W. H. Latta, W. H. H. Miller, F. Winter* and *J. B. Elam,* for appellee.

McCabe, J.—This was an action begun by the appellant against the appellee in the Superior Court of Marion county to recover damages alleged to have been sustained by the plaintiff through the negligence of the defendant. The venue was changed to the Hancock Circuit Court where the issues were tried by a jury resulting in a special verdict under the recent statute, assessing the plaintiff's damages at $12,500.00 conditionally.

The circuit court overruled the plaintiff's motion for judgment in his favor on the special verdict, and sustained the defendant's motion for judgment thereon in its favor, and rendered judgment accordingly; and the only error assigned is upon these rulings.

The only question presented by the briefs for our decision is whether the special verdict finds facts sufficient to show that the plaintiff was free from fault or negligence contributing to his injury. He had alleged in his complaint, without which, or the substantial equivalent thereof it would have been totally insufficient, that he "did not in any manner by any negligent conduct or fault on his own part contribute to the injuries" complained of.

The special verdict is very long consisting of 156 questions and answers thereto; therefore, only the substance thereof will be given. Such substance is as follows: The defendant owned and operated an electric street railway on West Washington street running east and west in the city of Indianapolis, Indiana, extending west beyond White river, during the month of May, 1894. The line was double tracked in the middle of said street, eighty feet wide from property line to property line. The trolley wires conveying the electric power were hung on iron poles eighteen feet high, five inches in diameter at the top of the ground and three inches at the top of the poles, standing 125 feet apart,

equidistant between the double tracks, such tracks being four feet ten inches apart. The gauge of the street-railroad tracks was four feet and eight and one-half inches.

There was a gang of men working for the Manufacturers' Natural Gas Company putting gas pipe into a trench dug about three feet north of and parallel with the north track of said street-car line. The street cars ran west on the north track and east on the south track. One of the defendant's cars running east on the south track of said line on the 15th day of May, 1894, struck appellant and inflicted the injury complained of. It seems to be conceded that the motorman was guilty of negligence in not sounding the gong as it is called, on approaching the appellant so as to warn him of danger. The car was going at the rate of speed of ten to twelve miles an hour.

For a distance of 200 feet west of the point of said collision the tracks descended three inches. Just before the collision, the plaintiff quit his work, and walked south, near to the north rail of the south track, opposite to where he had been working, and looked attentively to the west to see if any car was coming from that direction on the south track. He saw 400 feet west. There was a street car coming east. There was nothing to obstruct his vision or prevent his seeing a car coming east on Washington street.

After plaintiff walked to a point near the north rail of the south street-car track he turned and walked toward the east, twenty-five feet. After he started to walk east along or near the north rail of the south track, until he was struck by the street-car, he did not look to the west for an approaching car.

The motorman did not see him or give any warning. When he last looked west the car was 528 feet west of him. After the plaintiff quit work, and before

the collision, he listened for an approaching street car. There was nothing to prevent the plaintiff from hearing the approach of the street car with which he collided before the collision, and he was not prevented from hearing it. The verdict states that plaintiff was facing east when he was struck, and yet it states that the left side of the car struck him on his left side. That was impossible, if he was facing east. He must have been facing west, toward the approaching car, or at least facing north or northeast.

The 122d and 123d interrogatories and answers thereto are as follows: "122. Did the plaintiff at said times or either of them, see any street car approaching from the west, or on said south track? Ans. No. 123. Did he at said times look as far west as 300 or 400 feet? Ans. Yes." And the 131st interrogatory and answer read as follows: "Did he hear said car, or gong thereof, as it approached at the time he was struck? Ans. No." Another interrogatory and answer was as follows: "53. If he looked, was there anything to obstruct his vision, or prevent his seeing a car coming east on Washington street? Ans. Line poles."

If this answer is to be construed as contradicting that answer saying that there was nothing to prevent him seeing the car coming on Washington street, it would have the effect to destroy both answers, and leave the finding blank on that question. But the answers are not irreconcilable. The first says there was nothing to prevent him from seeing the car, while the answer to the question in the other case, as to whether there was anything to obstruct his vision or prevent him from seeing the car, is "line poles." These line poles may have partially obstructed his vision, and partially prevented him from seeing the approaching car, but it does not seem possible that they could have wholly done so. Therefore, it seems but reasonable

that that is what the jury meant by that answer, and not to answer in direct contradiction of their other answer that there was nothing to prevent him seeing the car. This construction of the verdict seems imperatively required, because the burden rested on the plaintiff to affirmatively show that he was free from contributory negligence, as much as to show that the defendant was guilty of negligence.

Our construction of the verdict is that it shows that there was nothing to prevent the plaintiff from both seeing and hearing the approaching car. And as was said in *Ohio, etc., R. W. Co.* v. *Hill*, 117 Ind., at p. 61: "If a traveler, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by collision, either that he did not look, or if he did look, that he did not heed what he saw. Such conduct is held negligence *per se*."

And as was also said in *Cones* v. *Cincinnati, etc., R. R. Co.*, 114 Ind., at p. 330, that: "The law will assume that he actually saw what he could have seen, if he had looked, and heard what he could have heard, if he had listened. To the same effect are *Lake Erie, etc., R. R. Co.* v. *Stick*, 143 Ind. 449.

Counsel for appellant concede the rule as above stated to be well settled in this State, but contend that it is not applicable to street railroads. In all cases ordinary care only for one's own safety is required to exonerate him from the charge of contributory negligence; and it is also true, that what is ordinary care under one set of circumstances might amount to negligence under a different set of circumstances.

Ordinary care is such care as a person of ordinary prudence exercises under the circumstances of the danger to be apprehended. The greater the danger the higher the degree of care required to constitute

ordinary care, the absence of which is negligence. But it is a question of degree only. The kind of care is precisely the same.

Merely because steam railroad trains are heavier and more difficult to control than an electric street car on a street railroad, is no reason why a person on such street-car line is excused from the duty of stepping off or away from the track on the approach of the electric car.

In *McGee* v. *Consolidated Street R. W. Co.*, 102 Mich. 107, 60 N. W. 293, the Supreme Court of Michigan said: "The city authorities recognized the necessity of rapid transit, and limited the cars on that street to fifteen miles per hour. These cars are heavy, laden with motors, and they cannot at once be stopped. They have no right to run down pedestrians, but those in charge have a right to suppose that pedestrians will not walk upon the track without looking to see if a car is coming. It is well known that these crossings are places of danger, and that cars do not stop at every crossing. Here the custom was to stop on the opposite crossing from where the plaintiff was. . * * * He was bound to look both ways before getting on the track. It will not do to say that he acted prudently and carefully in looking before getting off the curb, and was, therefore, not bound to look again because he saw no car coming from the north at that time. A car coming at fifteen miles would pass a great distance while a pedestrian was going thirteen feet ten inches. The plaintiff was bound to look before stepping upon a place of danger."

And so in this case, a car coming at a speed of twelve miles an hour could come a great distance while plaintiff was walking east along the track twenty-five feet, during which time he made no attempt to look west.

And the Michigan Supreme Court in the case named, further said: "It is said by counsel for plaintiff that, while this may be the rule [as to duty to look and listen] in regard to steam railways, it cannot be applied to street railways. * * * We see no more reason for applying the rule that one must look and listen before crossing the tracks of a steam railway than that one must look and listen before crossing a street-car track upon which the motive power is electricity or the cable. In this State it is well settled that persons passing over railroad crossings must exercise care. They must look and listen, and, under certain circumstances, must stop, before attempting to cross. Electric street-car crossings are also places of danger. The cars are run at a great speed on this street in question. The city ordinance permits it, and the rule must be that, before going upon such tracks, every person is bound to look and listen." To the same effect are *Blakeslee* v. *Consolidated Street R. W. Co.*, 105 Mich. 462, 63 N. W. 401; *Fritz* v. *Detroit, etc., Street R. W. Co.*, 105 Mich. 50, 62 N. W. 1007; *Carson* v. *Federal Street, etc., R. W. Co.*, 147 Pa. St. 219, 23 Atl. 369; *Hickey* v. *St. Paul City R. W. Co.*, 60 Minn. 119, 61 N. W. 893.

We are, therefore, of opinion that the special verdict fails to show that the plaintiff was free from contributory negligence and that the circuit court did not err in overruling appellant's motion for judgment in his favor on the special verdict, and did not err in sustaining the appellee's motion for judgment in its favor on the special verdict and in rendering judgment in its favor upon such verdict.

The judgment is affirmed.

ON PETITION FOR REHEARING.

McCABE, J.—The principal contention in support

.of the petition for a rehearing is that we erred in applying the same rule to the acts of the appellee, as to contributory negligence, that is applicable to the ordinary traveler over the streets. It is contended with much vigor and ability that the authorities cited in support of the original opinion are not applicable because they, it is insisted, apply to and announce the rule applicable to ordinary travelers. That appellant was not an ordinary traveler or pedestrian over the street, and, hence, a different rule should be applied to him.

Appellant's principal contention in his original brief was, that there is a distinction between negligence cases against steam railways and street railways as to the degree of care required of the complaining party. But now his principal contention is that he was not an ordinary traveler, and, hence, the rule in such cases is not to be applied to him; and *Shoner* v. *Pennsylvania Co.*, 130 Ind. 170, and a large number of cases of that class are cited in support of the contention. That case and the class of cases cited in it, and those cited by appellee's learned counsel, are cases where the defendant company had employed the plaintiff to work on the track of its railroad, or in other positions exposed to danger, making it the duty of the servant to give his attention to his work, and especially where such duty is of an absorbing nature liable to engross the entire attention of the servant. There can be no doubt that in that class of cases the law exacts a greater degree of care and caution on the part of the master, and a much less degree on the part of the servant than in other cases. It would be extremely unjust, and therefore unlawful, to permit the master to require of his servant the performance of duties on the track of its railroad, the very nature of which must necessarily engross his whole mind and

attention, and then require of him, while thus engaged, the same close observation for his safety that would be required of him in other cases.

But no such case is presented here, and no such relation existed. The appellant owed no duty to the appellee, and *vice versa.* The appellant was engaged, it is true, in laying gas pipe in a trench about three feet north of the north track of the appellee's street railway, but he was in the employ of another and an entirely different corporation, the Manufacturers' Natural Gas Company. If in his work he found it convenient to use the appellee's street railroad track to walk up and down, back and forward, or across the same, he used it as all other people had a right to use it. He used it because it was a part of a public street, subject to which user the company held its franchise; otherwise he would have been a trespasser. He used it just as any other person had a right to use it. It was not the work he was engaged in that gave him the right to use the appellee's track, but it was because the track was a part of a public street, and the public had a right to use it as such, subject to the superior right of the company as to priority of passage.

He stood then in the same category of the baker, the merchant, or the grocer, or any other member of the public who sends his servant out to deliver goods or perform any other service, and such servant finds it convenient to travel on the appellee's street railway track. All such persons must be held to be ordinary travelers, and as such, bound to the observance of ordinary care for their own safety. This duty it is tacitly conceded that appellee did not discharge.

It is next repeatedly urged that the jury expressly found that the plaintiff was free from negligence; and it is further urged that the question of negligence or no negligence is a question of fact and not of law. The

very case counsel have cited and relied on, both in their original brief and the one in this petition, namely, *Shoner* v. *Pennsylvania Co., supra,* states the law very differently, thus: "In cases involving questions of negligence, the rule is now settled that, where the facts are undisputed, and the inferences which may be drawn from them are not equivocal, and can lead to but one conclusion, the court will adjudge, as matter of law, that there is, or is not, negligence. While in cases where the facts are disputed, or where they are equivocal, the question of negligence must be determined by the jury under proper instructions. *Baltimore, etc., R. R. Co.* v. *Walborn,* 127 Ind. 142; *Mann* v. *Belt R. R., etc., Co.,* 128 Ind. 138, and authorities cited in each. See, also, *Rogers* v. *Leyden,* 127 Ind. 50, where a full citation of authorities will be found." See, also, *Rush* v. *Coal Bluff, etc., Co.,* 131 Ind. 135; *Cleveland, etc., R. W. Co.* v. *Harrington,* 131 Ind. 426; *W. C. DePauw Co.* v. *Stubblefield,* 132 Ind. 182; *Cincinnati, etc., R. W. Co.* v. *Grames,* 136 Ind. 39; *Smith* v. *Wabash, etc., R. R. Co.,* 141 Ind. 92; *Board, etc.,* v. *Bonebrake,* 146 Ind. 311.

It is not even claimed, nor is it true, that the inferences arising from the facts found were equivocal, or that two persons equally intelligent and impartial might draw different conclusions or inferences from the facts found; and as the special verdict has settled the facts, they are no longer in dispute, nor is it even claimed by appellee's learned counsel that they are any longer in dispute. The question of negligence or no negligence on the appellant's part, contributing to his injury, is, therefore, purely a conclusion of law, to be drawn by the court from the facts found by the jury; and, hence, the statement of such inference or legal conclusion by the jury has no force.

Petition overruled.