CAWLEY, Respondent, vs. LA CROSSE CITY RAILWAY COMPANY, Appellant.

*October 14 — November 1, 1898.*

*Street railways: Injury to person driving upon track: Negligence: Contributory negligence: Failure to look and listen: Court and jury.*

Plaintiff was traveling on the highway along defendant's street-railway track where she could have seen and heard a car approaching from behind, for several hundred feet, had she looked and listened for that purpose. She said she did look and listen but did not see or hear a car. She turned and drove onto the track for the purpose of passing a wood wagon that was going the same way she was. Before she got by the wood wagon, so as to turn to the right off the track in front of it, she was struck by a car and injured. After the accident the car stood about two car lengths from where it struck plaintiff's vehicle, and the wrecked vehicle was in the road behind the wood wagon. The motorman sounded his signal bell before and after plaintiff turned toward the track, and as soon as he observed she was going on the track he turned off the current, set the brakes, and did all that he could to stop the car. *Held:*

(1) That there is no room on the facts to say defendant was negligent; and that the evidence conclusively shows contributory negligence of the plaintiff.

(2) That the rule of look and listen before going upon a railway track, whether steam or electric, is inflexible, and the nonobservance of it is negligence *per se;* that it is a rule of law,— not a rule of evidence permitting a jury to say that there was or was not negligence where the duty was not performed.

(3) Where there is any credible evidence that, under any reasonable view of it, will admit of an inference either for or against the

Cawley vs. La Crosse City R. Co.

plaintiff, the rule that the proper inference to be drawn is a question for the jury should be firmly adhered to, but when the evidence is not susceptible of reasonable conflicting inferences, the motion for a nonsuit or the direction of a verdict should be granted as a right of the moving party, and that implies a judicial duty on the part of the court to decide that way.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Reversed.*

Action to recover compensation for personal injuries alleged to have been caused by the negligence of defendant's employees. The negligence complained of was running an electric car at a rapid rate, without ringing any bell or giving any warning of its approach. At the close of plaintiff's case there was a motion for a nonsuit on the ground that the evidence in her behalf failed to show actionable negligence and did show that plaintiff carelessly placed herself in the place of danger where she was injured, by driving on the track when a rapidly approaching car, in plain sight and hearing, was in close proximity to her. The motion was denied. At the close of the evidence there was a motion by defendant's counsel for the direction of a verdict, which was denied. After verdict for the plaintiff there was a motion for a new trial on the same grounds urged in favor of the two previous motions, which was denied. All the rulings mentioned were duly excepted to. Judgment was rendered in plaintiff's favor on the verdict, and the defendant appealed.

For the appellant there was a brief by *Losey & Woodward,* and oral argument by *G. M. Woodward.* They argued, among other things, that it was plaintiff's duty to look and listen for a coming car. *Lenz v. Whitcomb,* 96 Wis. 310; *Schmolze v. C., M. & St. P. R. Co.* 83 id. 659; *Schlimgen v. C., M. & St. P. R. Co.* 90 id. 186; *Haetsch v. C. & N. W. R. Co.* 87 id. 304; *Schneider v. C., M. & St. P. R. Co.* 99 id. 378; *Gardner v. D., L. & N. R. Co.* 97 Mich. 240; *Gilmartin v. L. V. R. T.*

*Co.* 40 Atl. Rep. 322. This rule applies to electric as well as to steam roads. *Young v. Citizens' St. R. Co.* 148 Ind. 54; *Everett v. Los Angeles C. E. R. Co.* 115 Cal. 105. It is negligence in law to get on the track in front of an approaching car. *Weiss v. Metropolitan St. R. Co.* 33 App. Div. (N. Y.), 221; *Fenton v. Second Ave. R. Co.* 126 N. Y. 625; *Thompson v. Buffalo R. Co.* 145 id. 196; *Rohe v. Third Ave. R. Co.* 31 N. Y. Supp. 797. Failure to see and hear approaching danger when there is nothing to obstruct sight or hearing raises the presumption that the look which plaintiff pretends to have given when she trotted onto the track was not in fact given, or that it was given in such a hasty and careless way as to be useless. *Gilmartin v. L. V. R. T. Co.* 40 Atl. Rep. 322; *Roth v. S. E. Barrett Mfg. Co.* 96 Wis. 618; *Young v. Citizens' St. R. Co.* 148 Ind. 54; *Herbert v. S. P. R. Co.* 121 Cal. 227; *Greengard v. St. Paul C. R. Co.* 75 N. W. Rep. 221; *Ring v. C., St. P. & K. C. R. Co.* id. 492; *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378.

*Ray S. Reid,* for the respondent.

MARSHALL, J. The sole question involved on the various assignments of error which we deem necessary to consider is, Was there evidence, under the most favorable view that can be reasonably taken of it, to warrant a verdict for the plaintiff? If there was not, and that situation was apparent at the close of plaintiff's case, the court erred in denying the motion for a nonsuit. If such was the situation at the close of the evidence on both sides, the motion for the direction of a verdict should have been granted, and the errors in denying the two previous motions of course were repeated in failing to set the verdict aside and grant a new trial.

The circumstances of the accident, as shown conclusively by the evidence, are substantially as follows: It occurred in the early part of the evening, a little after dark, on a railway track laid on a broad, level, raised street, not crossed

Cawley vs. La Crosse City R. Co.

by any other street for a distance of about 2,400 feet. On the west side of the street were two electric railway tracks, occupying some twelve feet in width. At a safe distance east of the tracks there was a macadamized roadway about twenty feet wide, specially fitted for public travel by vehicles, and east of that for a distance of some fifty feet the street was reasonably level and smooth so there was ample opportunity for teams to pass each other by night or day without driving onto the railway tracks. Plaintiff, while proceeding north, riding in a phaeton drawn by one horse, traveling on the macadamized roadway behind a heavy wood wagon, turned to the left and drove onto the railway track for the purpose of passing such wagon. The reason given for driving to the left instead of to the right was that plaintiff deemed the latter a little rough so that, had she turned that way, the parcels she had in the phaeton were liable to fall out. She drove at quite a brisk trot as she turned to the left and drove onto the railway track. She had proceeded, in endeavoring to pass the wood wagon, but a short distance when she was run into by a car going in the same direction. That caused the injury. She said she looked and listened for a car before driving onto the track, but did not see or hear any. The car was in perfect condition, being supplied with all the customary appliances, such as a brake, a suitable headlight, and a signal bell. It was running at a lawful rate of speed and the motorman was at his post, keeping a sharp lookout ahead. As he approached the teams driving along at the right of the track, and before plaintiff turned toward the track, he sounded his signal bell. As soon as he observed the movement of the horse toward the track he sounded the bell, and immediately turned off the current and did all that was in his power by applying the brake to stop the car. It nevertheless ran into the plaintiff's phaeton, throwing it off the track to the right, plaintiff at the same time falling out of the phaeton to the

left.   After the collision the car went about two or three car lengths and stopped.   The wrecked phaeton was then found in the roadway behind the wood wagon.

We search in vain in the foregoing to find any support whatever for the charge of negligence contained in the complaint.   In view of that, upon what theory the learned trial judge submitted the case to the jury we are unable readily to perceive.   Without any evidence whatever to sustain the charge of negligence made in the complaint, but, on the contrary, in the face of evidence showing that everything was done to guard against all dangers reasonably to have been apprehended respecting the personal safety of plaintiff as she was traveling on the road along the street-car track, and to warn her off the track when she turned to the left, and to avoid injuring her after she entered upon the track, it was left to the jury to say whether the defendant was culpably negligent or not, as if negligence under the circumstances were a disputed question of fact.   The rule seems to have been overlooked that when the evidentiary facts are all undisputed and there is only room for one reasonable inference as to the ultimate fact in issue, it is for the court to draw the proper inference as a matter of law.   There does not appear to be a scintilla of evidence tending to show negligence on the part of defendant.   The only evidence in that regard, claimed by plaintiff's counsel, is that the motorman did not use reasonable diligence after he saw, or might have seen, the plaintiff turn toward the track.   That is predicated solely on the theory that plaintiff's testimony shows, or tends to show, that she traveled the distance requisite to pass two or three teams before she was struck by the car.   A careful examination of her evidence leads to the conclusion that the jury were not warranted in saying from it that plaintiff passed more than one team before the accident, while the undisputed fact in the case, that the wrecked phaeton was found immediately after the accident behind the wood wagon

shows that it must have been struck very soon after the horse turned in upon the track and before it had time to pass such wagon far enough to turn to the right ahead of it.  It is easy to see how plaintiff might have been mistaken, in view of the very uncertain nature of her evidence and her interest in the result of the trial; but the undisputed fact as to the location of the wrecked phaeton with reference to the wood wagon leaves no room for a reasonable belief other than that plaintiff had not passed fully by that wagon before the car reached her.  All the evidence and all reasonable inferences therefrom are consistent with that theory, and with no other; so if there were anything in plaintiff's evidence, standing alone, tending to show that she had passed two or three teams before, and we say there is not, the rule of law often announced, that the testimony of an interested party contrary to the facts otherwise conclusively established in the case and all reasonable inferences from the situation disclosed by the evidence, does not raise a conflict requiring a finding by the jury.  *Flaherty v. Harrison,* 98 Wis. 559; *Badger v. Janesville Cotton Mills,* 95 Wis. 599.

So it follows, as before stated, that on the question of defendant's fault there was not only no evidence tending to establish the allegations of the complaint, but the evidence affirmatively established the contrary.  The failure, therefore, to grant the nonsuit and to direct a verdict for defendant, and to set aside the verdict and grant a new trial, are errors too plain to require more to make them apparent than a mere statement of the facts established by the evidence.

But, if it were not for the failure to establish negligence of the defendant, plaintiff could not recover on account of her contributory negligence, which appears as a matter of law from the undisputed facts.  The situation was such that it was plaintiff's duty, in the exercise of ordinary care, to look and listen before going upon the track.  That is conceded.  The court so instructed the jury in the following

language: "It is negligence as a matter of law for a person
to drive upon the track of an electric railway without look-
ing or listening for approaching cars; " and again, "If you
find from the evidence that plaintiff went onto the railway
track without looking carefully down the track for cars, then
your verdict must be for defendant." The effect of those
instructions, obviously intended, was that if the plaintiff
knew, or might have known, by the use of her senses of see-
ing and hearing, that a car was approaching in dangerous
proximity when she drove upon the track, she was guilty of
contributory negligence, precluding a recovery. That is the
law respecting the duty of persons to avoid danger from
injury upon electric railway tracks, as well as upon steam
railway tracks, as is abundantly shown by cases cited in
defendant's brief. *Young v. Citizens' St. R. Co.* 148 Ind. 54;
*Everett v. Los Angeles C. E. R. Co.* 115 Cal. 105; *Hall v.
West End St. R. Co.* 168 Mass. 461. See, also, *Omslaer v.
Pittsburg & B. T. Co.* 168 Pa. St. 519; *Flanagan v. People's
P. R. Co.* 163 Pa. St. 102; *Henderson v. Detroit C. St. R. Co.*
(Mich.), 74 N. W. Rep. 525; *Blaney v. Electric T. Co.* 184
Pa. St. 524; *McQuade v. Metropolitan St. R. Co.* 17 Misc.
(N. Y.), 154; Booth, St. Ry. Law, §§ 311, 312; *Kane v. Peo-
ple's P. R. Co.* 181 Pa. St. 53. In *Omslaer v. Pittsburg &
B. T. Co., supra*, it is said that the rule of "look and listen"
before attempting to cross the tracks of a steam railroad is
inflexible, and that the nonobservance of it is negligence
*per se*. The rule is just as applicable to the crossing of a
street-railway track operated by a cable or electricity, and
we need not go outside of our own court to find that exten-
sion of it. In *Johnson v. Superior R. T. R. Co.* 91 Wis. 233,
the present chief justice said, in effect, that if a person drive
upon a street-railway track without looking for approaching
cars, and receive an injury, and the facts in that regard ap-
pear conclusively in a subsequent action by the injured party
against the railway company for damages, it is the duty of

the court to nonsuit the plaintiff or direct a verdict in favor of the defendant.

The theory upon which the court sent this case to the jury on the subject of contributory negligence manifestly was that, conceding the rule of law requiring plaintiff to look and listen, her testimony that she did so was sufficient to require the jury to find where the trouble lay, as if it were permitted to them to say on such evidence that she did in fact look and listen and yet did not see or hear the car that was unquestionably in plain sight and hearing. In that there was a failure to observe the limits beyond which a jury cannot go. They cannot go beyond the boundary of reasonable probabilities in determining facts from evidence without going into the realms of conjecture or perversity. This court has often held that the rule of law that requires a person to look and listen before going upon a railway track requires him to see and hear an approaching car if it is so located as to be plainly within view and hearing; that evidence of a person so circumstanced, that he looked but did not see, or listened yet did not hear, the car, if believed at all, is only to establish contributory negligence by show- ing that he knowingly placed himself in a place of danger. *Groesbeck v. C., M. & St. P. R. Co.* 93 Wis. 505; *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378; *Steinhofel v. C., M. & St. P. R. Co.* 92 Wis. 123; *Haetsch v. C. & N. W. R. Co.* 87 Wis. 304. In *Burke v. N. Y. C. & H. R. R. Co.* 73 Hun, 32, the court said, if a person looks he is supposed to do so for the purpose of seeing, and if the object is in plain sight and he apparently looks but does not see it, it is manifest that he does not do what he appears to do and has not com- plied with the rules of law. On the same subject in *Young v. Citizens' St. R. Co.* 148 Ind. 54, the court, by Mr. Justice McCabe, stated the rule thus: "If a traveler by looking could have seen the approaching train in time to escape, it will be presumed, in case he is injured by a collision, either

that he did not look, or if he did look that he did not heed
what he saw.   Such conduct is negligence *per se.*"   And
again, the same court, in *Cones v. C., I., St. L. & C. R. Co.*
114 Ind. 328, further emphasizing the rule as one of law,
said: "The law will presume that he saw what he could
have seen if he had looked, and heard what he could have
heard if he had listened."   In *Blaney v. Electric T. Co.* 184
Pa. St. 524, the supreme court of Pennsylvania used lan-
guage quite as strong, as witness the following: "When a
person places himself in danger, and is struck by a car on a
road that is in plain sight and hearing, the unavoidable in-
ference is that he did not look for a car when ordinary in-
telligence and prudence disclosed that there might be one,
or, seeing one perilously near him, placed himself in its way."

So we may say that the duty is absolute to look and listen
before going upon either a steam railroad track or an electric
street-railway track, and to see and hear an approaching car,
if within plain view and hearing to a person exercising his
senses of hearing and seeing with ordinary prudence to de-
tect it, having regard for the dangers reasonably to be appre-
hended, and that failure to perform that duty, or, after
performing it, to keep out of the region of danger, is negli-
gence *per se;* that it is not a mere rule of evidence which a
jury may be permitted to consider, and say there was or was
not negligence in a given case, according to their notions,
but that it is a rule of law to be applied by the court when
the facts are undisputed, and by the jury under the direction
of the court when the facts are disputed.   Thus far, at least,
the law of negligence has proceeded in the natural process
of development, through the wisdom of courts in adapting
old principles to new conditions brought about by the means
of rapid transit through populous districts, demanded by the
times, and the dangers incident thereto, and the mutual obli-
gations of the various members of the community to shape
their conduct with reference to the circumstances surround-

ing them and administering daily to their comfort, prosperity, and happiness. The bench and bar, and litigants as well, will partake of benefits that unquestionably flow from having definite and certain rules of law so far as practicable on this most important branch of jurisprudence recognized and enforced.

Candor compels us to say that in this case the learned trial court appears to have shifted a duty onto the jury which was plainly judicial, and when they failed to discharge it properly, allowed the result to stand as the law of the case. The jury did not find the fact because there was no controversy in that regard. They said that conduct on the part of defendant was actionable negligence, and conduct on the part of plaintiff was consistent with ordinary care, when the proper application of well-settled rules of law would have led to a contrary result.

The peculiar circumstances of this case move us to reiterate what has often before been said by this court, that though the rule that where there is any credible evidence which, under any reasonable view of it, will sustain a recovery, and there is opposing evidence, it is for the jury to say where the truth lies, should be firmly adhered to, where the evidence is clearly susceptible of only one reasonable inference, the motion for a nonsuit, or the direction of a verdict accordingly, should be granted as a matter of right, which implies a judicial duty to decide that way and not to abrogate the judicial function and shift it onto the jury. *Finkelston v. C., M. & St. P. R. Co.* 94 Wis. 270. A proper administration of justice requires that such a situation should be met and the duty involved be discharged as contemplated by our judicial system, just as much as that the province of the jury to decide the facts from the evidence, where there is any conflict in that regard, should not be invaded by the court. The scope of judicial duty, and of that of the jury as well, is clearly marked, and a failure to maintain

the integrity and inviolability of either is subversive to the system itself, and tends to throw doubt upon its efficacy to secure the highest attainable degree of justice between individuals, and to promote the ends of good government.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.