BOTTJE *v.* GRAND RAPIDS, GRAND HAVEN & MUSKEGON RAILWAY CO.

NEGLIGENCE—STREET AND INTERURBAN RAILWAYS.
    Where the horse which plaintiff was driving became suddenly frightened at a car approaching from behind, and turned from the place of safety in which he was driving it, onto the track in front of the car, and a collision ensued, no negligence is shown on the part of the railway company.

Error to Ottawa; Padgham, J. Submitted April 28, 1909. (Docket No. 106.) Decided July 6, 1909.

Case by Edward A. Bottje against the Grand Rapids, Grand Haven & Muskegon Railway Company for negligent injury to plaintiff's horse and buggy. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed.

*Walter I. Lillie*, for appellant.

*Carroll, Kirwin, & Hollway*, for appellee.

MONTGOMERY, J.    The defendant is an interurban railway; its line extending from Grand Haven to Grand Rapids.  On the 20th of May, 1908, while plaintiff was driving alongside of the track in the highway, a collision occured, causing fatal injuries to the horse of plaintiff, and damaging the buggy and harness.  The present action originated in justice's court, and on appeal to the circuit, at the conclusion of the plaintiff's case, a verdict was directed in favor of the defendant.  The declaration was oral, and, as it is brief, we quote the same at length:

"Plaintiff declared orally for damages for negligence on the 20th day of May, 1908, on the public highway between Spring Lake and Grand Haven, Mich., while driving horse from Spring Lake to Grand Haven on 7th street, just east of the bridge, east of the Challenge Refrigerator Company, was struck by car coming to Grand Haven behind the plaintiff and in full view of him for a great many feet.  They failed to ring a bell or to warn the plaintiff or to slack up the speed of the car, which was backing in.  And, as the plaintiff turned out to pass another rig and turned close to the rail, the car came upon him.  His horse became frightened, and jumped onto the track or towards it, and was struck or injured so it had to be killed.  Buggy injured, and plaintiff thrown from buggy.  All to the plaintiff's damage of $100."

The evidence shows that, on the day in question, the defendant's car was being backed along the street; that this was made necessary by the fact that certain streets of the city of Grand Haven were torn up on account of improvements being made.  The plaintiff's description of the collision is that as he was driving along the highway he had occasion to pass a rig being driven by one Staap; that he turned out to go by this rig, and after driving by, his own buggy was far enough from the track so that a car could have passed him without injury, but that, as the car approached, the horse became frightened at the noise

in the rear and jumped in front of the car, and received the injuries complained of.   We quote from the record:

He testified "that he had just accomplished the turn—right about there—and passed that right, and was pulling on his left line pulling the pony back in the center of the traveled portion of the highway; that the wheel of his buggy was nearer the track than was the pony when the car came on; that he does not know how far the same projects over the rail, but it does project some; that the buggy was smashed, and he don't know whether the car did it or not; that the car struck the horse first; that the suddenness of the car coming up caused the car to hit the horse; that the suddenness of the car coming up caused the horse to jump, frightened the pony and she jumped, not knowing which way to jump to get out of the way; that it was the noise and suddenness of the car coming up that made the pony jump; that, if she had not jumped in front of the car, 'I hardly think it would have taken place;' that, if there had not been any car there, she wouldn't have been killed; that the cause of the accident was the pony jumping in front of the car having become frightened at the noise and suddenness of the approaching car; the car coming up and the pony jumping all occurred very suddenly, an instant of time; that the car went about a car's length after the pony was struck before it stopped."

The circuit judge was of the opinion that no negligence was shown on the part of the defendant.   He said in determining the case:

"There was no distance back of this place where this accident occurred where it would seem under this testimony that the servants of this company could have acted, or that their attention could have been called to any danger, because the plaintiff here himself says that, if it had not been for the jumping of the horse, there would not have been any danger, he thinks, and, of course, if that is so, there could not have been any negligence on the part of the employés.   They could not have foreseen which way that horse was going to jump.   Of course, if he had jumped the other way, he would have been safe, or if he had kept straight ahead, he would have been safe."

We think this fairly states the case, and the application

of well-settled rules of law rendered it necessary for the circuit judge to reach the conclusion announced. The case is unlike the case of *Montgomery* v. *Railway Co.*, 103 Mich. 46 ( 61 N. W. 543, 29 L. R. A. 287 ), and also unlike *Blakeslee* v. *Railway Co.*, 105 Mich. 462 ( 63 N. W. 401 ). In the first case, the injured party, who was directly in line with the car, was known by the motorman to be in a position where he would receive an injury if the car proceeded without halting, and in the *Blakeslee Case* the horse was turned in in front of the car far enough in advance of the collision to have enabled the motorman to bring the car under control. In the present case there was nothing to give notice to the defendant's employés that a collision was liable to occur. The plaintiff's carriage and horse were both a sufficient distance from the track to enable the car to pass without causing injury. The case is ruled by *Fritz* v. *Railway Co.*, 105 Mich. 50 ( 62 N. W. 1007 ). As we said in that case:

"So long as the plaintiff was traveling in the same direction, and at such a gait as would not result in collision, it cannot be said that the motorman had any occasion to sound the gong, as he would have no reason to apprehend that the plaintiff would come to a stop or make a short turn across the track."

The judgment is affirmed.

Ostrander, Hooker, Moore, and Brooke, JJ., concurred.