SCHNEIDER, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*March 25 — May 3, 1898.*

*Railroads: Collision at highway crossing: Contributory negligence: Proximate cause: Excessive speed: Statutory liability.*

1. For a person approaching a railroad crossing on a diagonal street, in a closed vehicle containing noisy articles, the rear of such vehicle being towards a coming train which he knew was about due, not to stop and look out for such train after he came nearer than eighty feet to the track, though at the point where he did stop he could not see it when more than forty rods away, while at a distance of sixty feet from the track he might have seen it when 139 rods away, is contributory negligence on the part of such person, which will prevent a recovery for an injury by collision at such crossing. *Piper v. C., M. & St. P. R. Co.* 77 Wis. 247, distinguished.

2. The liability of railroads, under ch. 467, Laws of 1891, for injuries to persons caused by trains running at excessive speed in cities, etc., is not absolute, but is liable to be defeated by the contributory negligence of the person injured.

3. To define "proximate cause" in a charge to the jury as "a moving cause, or an immediate or direct cause to the remote cause," is

Schneider vs. Chicago, Milwaukee & St. Paul R. Co.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*
The facts in the case appear in the opinion.

For the appellant there were briefs by *Barbers & Beglinger*, attorneys, and *Geo. R. Peck* and *H. H. Field*, of counsel, and oral argument by *H. H. Field* and *Charles Barber*.

For the respondent there was a brief by *Eaton & Weed* and *Bouck & Hilton*, a separate brief by *Bouck & Hilton*, of counsel, and oral argument by *M. H. Eaton* and *Gabe Bouck*. They argued, *inter alia*, that negligence could not be conclusively established by a state of facts upon which fair-minded men may differ. *Duame v. C. & N. W. R. Co.* 72 Wis. 523; *Hooker v. C., M. & St. P. R. Co.* 76 id. 548; *Hill v. Fond du Lac*, 56 id. 246; *Kaples v. Orth*, 61 id. 533; *Ferguson v. W. C. R. Co.* 63 id. 152; *Siegel v. M. & N. R. Co.* 79 id. 405; *Langhoff v. M. & P. du C. R. Co.* 19 id. 497; *Valin v. M. & N. R. Co.* 82 id. 6; *Huntress v. B. & M. R. Co.* 66 N. H. 185. Whether the plaintiff stopped at a proper place to look for the train was a question for the jury. *Bower v. C., M. & St. P. R. Co.* 61 Wis. 457; *Piper v. C., M. & St. P. R. Co.* 77 id. 247; *Grand Trunk R. Co. v. Ives*, 144 U. S. 408; *Renwick v. N. Y. C. R. Co.* 36 N. Y. 132; *Moore v. C., St. P. & K. C. R. Co.* 102 Iowa, 595; *Smith v. B. & O. R. Co.* 158 Pa. St. 82; *McGill v. P. & W. R. Co.* 152 id. 331. Our statute (ch. 467, Laws of 1891) makes a railroad absolutely liable for damages caused by running trains at excessive speed in cities, etc. *McCall v. Chamberlain*, 13 Wis. 637; *Brown v. M. & P. du C. R. Co.* 21 id. 39; *Antisdel v. C. & N. W. R. Co.* 26 id. 145; *Ward v. Jefferson*, 24 id. 342. This construction is given to similar statutes in other states. *Comm. v. B. & L. R. Co.* 134 Mass. 211, 213; *McKimble v. B. & M. R. Co.* 139 id. 542–549; *Western & A. R. Co. v. Roberson*, 22 U. S. App. 187; *Laird v. R. R. Co.* 62 N. H. 254; *Rowell v. R. R. Co.* 57 id. 132; *Martin v. N. Y. & N. E. R. Co.* 62 Conn. 331; *Union P. R. Co. v.*

Schneider vs. Chicago, Milwaukee & St. Paul R. Co.

*De Bush,* 12 Colo. 294, 309; *Zeigler v. S. & N. A. R. Co.* 58 Ala. 599; *Hart v. W. R. Corp.* 13 Met. 99; *Rodemacher v. M. & St. P. R. Co.* 41 Iowa, 297; *Pratt v. A. & St. L. R. Co.* 42 Me. 579; *Thorpe v. R. & B. R. Co.* 27 Vt. 140; *R. R. Co. v. Acuff,* 92 Tenn. 26.

CASSODAY, C. J.   This action is to recover damages sustained by the plaintiff, November 26, 1895, while driving a milk wagon on Ninth street, across the defendant's main track, about a mile and a quarter southwesterly from the defendant's depot in Oshkosh.   Issue being joined and trial had, the jury returned a special verdict to the effect (1) that the defendant was guilty of negligence which was the proximate cause of the plaintiff's injury; (2) that the plaintiff was not guilty of negligence which contributed proximately to the injury; (3) that the plaintiff did stop and look northeasterly along the railroad track, and listen for a train, at the place on the street marked " C " on the plaintiff's map; (4) that the bell was not ringing as the train approached and passed over the Ninth street crossing; (5) that the whistle was not blown for the Sixth street crossing at or near the whistling post for that crossing; (6) that the whistle was not blown for the Ninth street crossing at or near the whistling post for that crossing; (7) that the train was running, at the time it approached the Ninth street crossing, at the rate of twenty-five miles per hour; (8) that the plaintiff's damages were assessed at $6,000.   Upon such verdict the court ordered judgment in favor of the plaintiff for the amount stated.   From the judgment entered thereon accordingly the defendant brings this appeal.

It appears from the evidence, and is, in effect, undisputed, that Ninth street is sixty feet wide, and runs east and west through Oshkosh; that the track of the defendant's main line, with a right of way sixty-six feet wide, runs in a southwesterly and northeasterly direction through the city, and

Schneider vs. Chicago, Milwaukee & St. Paul R. Co.

crosses Ninth street at a point about 350 feet west of Idaho street, making an acute angle of about thirty-four degrees between the southeast line of the railway and the north line of Ninth street; that on the southeast side of the railroad track, and on the north side of Ninth street, at the time of the accident, there were many houses, barns, buildings, and trees, with occasional vacant lots, and Idaho street; that the first street east of the place in question, intersecting Ninth street and running north, is Idaho street; that about 750 feet east of Idaho street, and parallel with it, is Dakota street, running north from Ninth street; that about 900 feet east from Dakota street, and parallel with it, is Ohio street; that about 700 feet north of Ninth street, and parallel with it, is Sixth street; that the railroad crosses that street about 1,250 feet northeasterly from the place in question; that a sewer had been built along the center of Ninth street a few months before the injury, and, when completed and covered, there was left a ridge of earth on the top, a few inches high, which had turned the travel by team on the north half of the street, where the plaintiff was driving as he approached the crossing; that this sewer terminated at a covered manhole, marked "B" on the map, ten feet from the east rail at the crossing; that point C, mentioned in the verdict, was pointed out to the plaintiff's witness Finch, a surveyor and civil engineer, by the plaintiff, June 1, 1897, the day before the commencement of the trial, and more than eighteen months after the injury, and is seventy-eight and one-half feet from the manhole mentioned, measured along the traveled course (that is to say, eighty-eight and one-half feet from the southeast rail at the crossing); that the traveled track of that street from point C to the crossing was substantially smooth and level at the time.

It further appeared that the plaintiff was a farmer at the time, twenty-six years of age, and lived five miles west of the city, and had been engaged in peddling milk in Oshkosh

Schneider vs. Chicago, Milwaukee & St. Paul R. Co.

for five years, and usually drove home westerly along Ninth street in a covered milk wagon drawn by a team of horses, one five years old, spirited, and afraid of the cars; that the other was older, but with similar disposition; that the wagon contained several milk cans, three kegs of beer, a stove, a raffling outfit, a wheel of fortune, and other articles which made more or less noise as the wagon passed along the frozen ground of the street; that it was an ordinary milk wagon (low wheels in front, and high wheels behind), for the delivery of goods in the city; that it could be turned short; that the box stood three and one-half to four feet from the ground; that the seat was about a foot high above the box, and three feet from the front end of the box; that there was a window in the door; that the glass did not extend from the top of the cover down to the bottom of the box; that the wagon was of wood frame, covered with canvas; that the canvas extended about three feet up from the box; that the plaintiff's head was about two inches from the top of the wagon; that there was a door on both sides and in front of the seat, and about eighteen or twenty inches wide, with glass at the top end of the door, fourteen by seventeen inches in size; that the plaintiff did not talk with Bartlett after leaving Idaho street; that he was familiar with these streets and this locality, and had been for about six years; that about half a mile east of the place in question the plaintiff and his companion, Bartlett, stopped at a saloon and drank some beer, and then started for the plaintiff's home; that when they reached Idaho street the plaintiff stopped his team, opened the door, looked north, and listened, to see if a train was coming, but neither saw nor heard any; that he then drove on west about 250 feet, to point C, mentioned in the verdict, ninety-eight feet southwest from the most westerly extremity of the red barn, immediately southeast of the defendant's right of way, which was the last building to intercept his view down the track towards the

northeast; that from that point he could see the whistling
post, a distance of 725 feet northeast of the crossing; that
at that point, C, the plaintiff, with Bartlett sitting on his
left, looked northeast out of the door, and listened for an
approaching train; that none was in sight, and he heard no
signals; that he was then within forty feet from the rail-
road track, at right angles from it, and eighty-eight and one-
half feet, along the course he traveled, to the southeast rail
of the track; that when he reached the southeast line of
the defendant's right of way, which was sixty-two and one-
half feet from the nearest rail, he could have seen down the
track to the northeast, had he looked, for 2,295 feet, but that
he did not look, and did not hear any bell ring nor whistle
sound; that he drove from point C, in a southwesterly di-
rection, at a rate of about three and one-half to five miles
per hour, leaving the door of his vehicle open, so as to hear
a train, or the signals of a train, if any; that the first thing
he " knew of a train was three toots of the whistle, when
the engine struck" the vehicle, and the injury occurred;
that at that time the plaintiff's horses were frightened, and
standing on their hind legs; that it was a cold day, with
the wind pretty nearly from the west; that Ninth street
was substantially level each way from the crossing; that
there was nothing to obstruct the view along the defend-
ant's right of way to the southwest for a considerable dis-
tance; that the collision occurred about 3:55 o'clock p. m.;
that the train left the depot in Oshkosh at 3:40 p. m.; that
the fireman testified that he rang the bell and looked ahead
as he approached the crossing; that the sun was shining di-
rectly in his eyes, which, with the snow on the ground, made
it difficult for him to distinguish objects at a distance; that
he did not see the team and wagon until the engine was
right on the crossing; and he was corroborated by other
testimony, but the plaintiff's rebutting testimony was to
the effect that the sun was not shining at the time, and that
it was cloudy.

1. For the purposes of this appeal, we assume, as found by the jury, that the train in question was at the time going at the rate of twenty-five miles per hour; that it did not ring the bell as it approached and passed over the Ninth street crossing, and that it did not blow the whistle at or near the whistling post for the Sixth street crossing, nor for the Ninth street crossing; and, hence, that the defendant was negligent. As stated by the learned trial judge, the main and controlling question in this case is whether the plaintiff was guilty of contributory negligence, in failing to look in the direction of the coming train after leaving point C. He regarded the question as a close one when he submitted it to the jury, and, after hearing the arguments for a new trial, concluded that it ought to be settled by this court.

At point C, the traveled track which the plaintiff followed turned from the north side of the street to a point at or very near the center of the street at the place of crossing the railway track, thus reducing the angle between such traveled track and the railway track from thirty-four degrees to about twenty-two degrees. The result was that in driving from point C to the point of collision, a distance of over eighty feet, the rear of the plaintiff's vehicle was towards the coming train. When the plaintiff stopped at point C, he had not reached the defendant's right of way; and his view in the direction of the coming train was necessarily obstructed by the red barn mentioned, so that he could only see down the track forty-four rods. Had he looked again, or in the first instance, when he had gone twenty-six feet nearer (that is to say, when he was sixty-two and one-half feet from the track by the line of travel), he could have seen down the track for a distance of 139 rods, and necessarily would have seen the train, and all would have been well. The plaintiff had stopped on Ninth street, at Negal's,— half a mile east of the place of collision,— about 3:30 p. m. That was ten minutes before the time for the train to start from the depot in Oshkosh. At that point he

was only about ninety rods from the railway track. As he advanced towards the crossing, he constantly came nearer and nearer to the railway track. At Dakota street, about seventy rods east of the crossing, he was only about forty rods from the railway track. At Idaho street, he was only about fifteen rods from the railway track. He was familiar with the time of the train, so at that point stopped and looked and listened. He necessarily knew that it had not yet passed. It was that conviction that made him stop and look and listen at point C. As he could only see down the railway track for a distance of forty-four rods, by reason of his view being partially obstructed by the red barn, can we say that he was in the exercise of ordinary diligence and care in driving from that point to the railway track, a distance of more than eighty feet, in a vehicle containing noisy implements, surrounded by canvas, and with the rear end of it towards the expected train, without stopping once to look or listen? We are clearly of the opinion that he was guilty of contributory negligence. The railway track was there for the purpose of running trains over it, and they were liable to pass at any moment. Even strangers were bound to know that fact,— much more, the plaintiff. He was bound to increase his vigilance as he approached the crossing. *Haetsch v. C. & N. W. R. Co.* 87 Wis. 304; *Nelson v. D., S. S. & A. R. Co.* 88 Wis. 396; *Schlimgen v. C., M. & St. P. R. Co.* 90 Wis. 194. To look when he was behind, or partially behind, some building, was no excuse for not looking when he reached the right of way, where he would have had an unobstructed view of the railway track for a distance of 139 rods.

The case is ruled by numerous adjudications in this court, only a few of which will be here cited: *Williams v. C., M. & St. P. R. Co.* 64 Wis. 1; *Schilling v. C., M. & St. P. R. Co.* 71 Wis. 255; *Seefeld v. C., M. & St. P. R. Co.* 67 Wis. 96; *Hansen v. C., M. & St. P. R. Co.* 83 Wis. 631; *Schmolze*

*v. C., M. & St. P. R. Co.* 83 Wis. 659; *McKinney v. C. & N. W. R. Co.* 87 Wis. 282; *Groesbeck v. C., M. & St. P. R. Co.* 93 Wis. 505. The case of *Piper v. C., M. & St. P. R. Co.* 77 Wis. 247, seemingly relied upon by counsel, is broadly distinguishable in its facts. In that case the plaintiff stopped and looked and listened after reaching the defendant's right. of way, and when within between fifty and sixty feet of the railway track, and at a point where he could see along the track, in the direction of the coming train, at least 900 feet; and, besides, his attention was forced away from further looking by the conduct of his team. It was not the case of mere inadvertence or inattention, which is necessarily inexcusable in one approaching a railway track upon which a train is liable to pass at any moment, and hence is a known place of danger. What is there said about a person approaching a railway crossing, assuming that a train is moving at a lawful rate of speed, when "nothing appears to the contrary," has reference to the facts present in that case, and the facts present in *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 489, and similar cases. But, when the *Langhoff Case* came before this court the second time, it appeared that the deceased must have seen and known of the two approaching trains, and, hence, that no such assumption could be indulged. *Langhoff v. M. & P. du C. R. Co.* 23 Wis. 43. To the same effect, *Chase v. M. C. R. Co.* 167 Mass. 383. Certainly, the principle has no application to the case at bar, where the plaintiff might have seen, but neglected to look. The second finding of the jury, to the effect that the plaintiff was not guilty of contributory negligence, is contrary to the undisputed evidence; and hence a nonsuit should have been granted, or a verdict directed in favor of the defendant.

2. Counsel contends that because the statute makes railway corporations liable to any person injured for all damages caused by trains running at an excessive rate of speed in cities, such liability is absolute, and cannot be defeated,

even by the plaintiff's contributory negligence. Laws ·of
1891, ch. 467. The precise question has not been expressly
decided by this court, although that statute has been men-
tioned in cases. *Nolan v. M., L. S. & W. R. Co.* 91 Wis.
21–24; *Wickham v. C. & N. W. R. Co.* 95 Wis. 26. Since
that enactment, however, a number of cases have been ·de-
cided by this court in which contributory negligence was
held to defeat the action, notwithstanding the train was
running at an excessive rate of speed in a village or a city.
This was so in *Groesbeck v. C., M. & St. P. R. Co.* 93 Wis.
505, cited by the defendant's counsel. In that case the
learned counsel for the plaintiff did not insist upon that
statute in his oral argument, although they did cite the
statute and make the point in their brief, and the question
was, in effect, decided. In view of the numerous adjudica-
tions of this court upon statutes creating a liability in lan-
guage just as emphatic as in the statute in question, it is
very manifest that contributory negligence in the case at
bar is a complete defense. Such is the statute creating a
liability for "insufficiency or want of repair" of a public
highway or street. R. S. 1878, secs. 1339, 1347. So the
original statute making railroad companies liable for all
damages sustained by failure to fence the right of way was
held not to bar contributory negligence. Laws of 1872, ch.
119, sec. 30; S. & B. Ann. Stats. sec. 1810; *Curry v. C. &
N. W. R. Co.* 43 Wis. 665, 683. The same rule applies
to the liability created by statute for failure to guard or
block the frogs in railway tracks. Laws of 1889, ch. 123;
S. & B. Ann. Stats. sec. 1809*a*; *Holum v. C., M. & St. P. R.
Co.* 80 Wis. 299; *Dugan v. C., St. P., M. & O. R. Co.* 85
Wis. 614. The same rule was applied to the statutory lia-
bility for not guarding dangerous machinery. *Thompson v.
Edward P. Allis Co.* 89 Wis. 523. We must hold that the
defendant is not barred from the defense of contributory
negligence by the statute cited.

3. Error is assigned because the court charged the jury that: "'Proximate cause' means this: It means a moving cause, or an immediate or direct cause to the remote cause. And the question is, Was the defendant guilty of negligence that was the proxImate cause of the plaintiff's injury?" This was error, under numerous and recent decisions of this court. *Davis v. C., M. & St. P. R. Co.* 93 Wis. 470–484; *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348; *Deisenrieter v. Kraus-Merkel Malting Co.* 97 Wis. 279; *McFarlane v. Sullivan, ante,* p. 361. Under the peculiar facts in this case, the error might not, of itself, work a reversal.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.