WILLS, Administrator, Respondent, vs. ASHLAND LIGHT, POWER & STREET RAILWAY COMPANY, Appellant.

*October 31 — December 7, 1900.*

*Street railways: Negligence: Injury to boy on track: Contributory negligence: Proximate cause: Special verdict: Instructions to jury.*

1. In an action to recover damages for the death of a boy about fourteen years old who, while on the track of a street railway, was struck by a car, it was error to submit in a special verdict a question as to whether the boy was of sufficient age, capacity, and ex-

Wills vs. Ashland Light, Power & Street R. Co.

perience to understand the danger and risk of going upon the track without looking and listening, " to the same extent as an ordinary adult person." That was not an issuable fact.

2. It was error in such case to submit the question of contributory negligence in such a way as to call upon the jury to determine whether the boy was using "such care and attention as an ordinary and careful person of the same age, understanding, and experience *should* have used," instead of such care as ordinarily careful persons of similar age and experience do use or would use under like circumstances.

3. To establish liability for an injury on the ground of negligence a special verdict, besides finding the particular things in which the defendant was negligent, should also find that such negligence was the proximate cause of the injury.

4. The submission of a question as to whether the defendant was "guilty of such want of ordinary care as to be the direct or proximate cause of the injury," together with instructions to the effect that the words "direct" and "proximate" mean about the same thing, was error.

5. A general verdict should not be submitted in connection with a special verdict.

6. A boy nearly fourteen years old was struck and killed by a car on the track of an electric street railway. From the trestle of a railroad which crossed above the street railway he had walked in the street diagonally toward the track and then by the side of it for a short distance as the car slowly approached from behind, and then, with his head turned away from the track, looking at a train which was passing on the trestle, he moved partially sidewise nearer and nearer to the track until the car was within a few feet, when, apparently hearing a shout from the motorman, he suddenly stepped sidewise upon the track just in front of the car. Upon the evidence (more fully stated in the opinions) it is *held:*

(1) The injury was not intentional on the part of the motorman, nor was his conduct so reckless and wanton as to evince a total disregard of the boy's safety.

(2) The boy was guilty of contributory negligence as a matter of law. DODGE and WINSLOW, JJ., dissenting as to the last point, are of the opinion that its decision is unnecessary, and also that upon the evidence the question of contributory negligence was one for the jury.

APPEAL from a judgment of the circuit court for Ashland county: W. C. SILVERTHORN, Judge. *Reversed.*

For the appellant there was a brief by *Tomkins & Merrill*, and oral argument by *Geo. F. Merrill*.

*A. Kanneberg*, for the respondent.

CASSODAY, C. J.   This is an action to recover damages for the death of plaintiff's intestate and son, Michael, caused by being struck by the defendant's moving car, about 4 o'clock in the afternoon of May 16, 1898.   Issue being joined and trial had, the jury returned a special verdict to the effect (1) that the boy killed by the accident was not of sufficient age, capacity, and experience to understand the danger and risk of going upon the railway track without looking and listening, at the time, place, and under the circumstances, to the same extent as an ordinary adult person; (2) that the boy at the time of the accident was using such care and attention as an ordinary and careful person of the same age, understanding, and experience should have used; (3) that, taking into consideration his age, understanding, and experience, he was not guilty of such want of ordinary care which contributed to the injuries he received; (4) that the motorman, in the exercise of ordinary care, should have sounded his gong on the car after seeing the boy going toward the track; (5) that the motorman could have stopped the car, after seeing the boy dangerously near to or about to step upon the track, in time to prevent the accident; (6) that the motorman, in the management of his car, did not use ordinary care in the use of the brake, bell, reverser, and other appliances, after seeing the boy going toward the track; (7) that the defendant's servant or servants was or were guilty of such want of ordinary care as to be the direct or proximate cause of the injury; (8) that they found for the plaintiff; (9) and assessed his damages at $3,700.   From the judgment entered upon that verdict for the amount stated, with costs, the defendant brings this appeal.

The place of the accident was on a bridge where Second

street, in the city of Ashland, runs over a ravine in an easterly and westerly direction. About 250 feet west of the place of injury, Second street descends toward the east quite rapidly for a distance of about 125 feet, to a point where that street is crossed by an elevated railroad bridge, over which ore trains pass northward to the Ashland docks. From the point in Second street so crossed by the elevated railroad bridge Second street ascends gently toward the east up the approach to the bridge in Second street over the ravine, at a grade of about three feet in one hundred feet.

On the day in question the deceased came by a path down under the railroad trestle on the east side of the railroad bridge, and on the north side of Second street, and entered that street about where the approach to the bridge over the ravine in that street commenced. He walked along eastward for about seventy-five feet in the space between the single car track in the middle of Second street and the sidewalk on the north side thereof, at a distance of five or six feet from the track. While he was so walking a heavy ore train was passing over the elevated railroad bridge, and, according to certain witnesses on the part of the plaintiff, the deceased was apparently watching that train, with his head turned over his shoulder. In the meantime the defendant's car in question came eastward on Second street, down the decline west of the railroad bridge, the brakes being thrown off as it approached that bridge, and it ran by its own momentum, the current being turned off, up the grade, onto the bridge, at from four to six miles per hour. The progress of the deceased at first was nearly parallel to the street railway track, but after a little he turned towards it so that, as the car approached within eight or ten feet of him,— and some of the witnesses say less,— he was near enough to be in danger of being struck. At that moment a man one hundred feet away in the street shouted to him, and apparently about the same time the motorman running the car also shouted

to him. The deceased was at that moment looking over his left shoulder away from the street railroad track, and stepped sideways or backwards right onto the track, almost in front of the moving car, and was struck by it and run over and killed.

The car was being operated at the moment by a man who had been practicing for a few days and was then under the care and direction of the regular motorman, the latter being seated or standing within and near the front end of the car. The motorman testifies that he sounded his gong as he passed under the railroad bridge, but that when he saw that the boy was in peril he forgot to sound his gong again, it being more natural for him to shout; that at the moment of shouting the boy was four or five feet away, and he applied the brakes, but did not reverse his electric current; that he never had stopped or tried to stop a car by reversing, but understood using the reverse lever; that he had never run the car alone; that one could operate those different levers and handles, and at the same time look ahead of his car outside, but that when one was new at the business it was a little awkward; that as soon as he had got to using both hands there was no trouble, and it was easier. There is conflict in the evidence as to the relative efficiency of reversing the current and applying the brake; some witnesses testifying that the former was more efficient and ought to be used in case of emergency. But a rule of the company, in evidence, is as follows: " Before reversing the motor the current should always be cut off and the brakes applied, bringing the car to a dead stop. This rule must be observed always, *except in cases of extreme danger*. Should the brakes fail to work on down grade, or other imminent danger to life be apparent, the car can easily be handled by the reversing switch, if the motorman exercises proper judgment. . . . It requires but very small movement of the controller handle to obtain sufficient power to reverse the wheels, and any

further movement would be of more danger than benefit. As soon as the car stops, break the current in the usual manner. This method of stopping must not be resorted to except in cases of extreme danger."

There are several grounds upon which the judgment in this case must be reversed. The first question submitted did not call for the determination of an issuable fact. The age, capacity, and experience of the boy were matters of evidence, and really undisputed. He was nearly fourteen years of age, and was a bright, intelligent, and well-grown boy. He had been brought up on a farm about fifteen miles from Ashland, and was accustomed to attend school in the winter, and was able to do much of a man's work on the farm, and had been in Ashland with his father three or four times a year. Whether he understood the danger and risk of going upon the railway track without looking or listening, " to *the same extent* as an ordinary adult person," was not an issuable fact.

The second question called upon the jury to determine whether the boy at the time was " using such care and attention as an ordinary and careful person of the same age, understanding, and experience *should have used.*" The wording of the question left it for the jury to fix the standard of care according to their own notions, instead of determining what care ordinarily careful persons of similar age and experience do use or would use. The charge of the court on that question was well calculated to confuse the jury. If we understand it correctly, it is to the effect that it was submitted in connection with the first question, for the reason that, if they should find in answer to that question " that by reason of his want of age and experience he was fully unable to fully comprehend the danger," and " was so confused and distracted as not . . . to look and listen," although they might answer the first question in the negative, " yet, if he was able . . . to comprehend this dan-

ger," then they could determine the fact by answering that question. By the third question the jury were required to determine whether the boy was "guilty of such want of ordinary care" as was thus mentioned in the second question. The result is that the question whether the deceased was guilty of contributory negligence was not submitted to the jury — certainly not properly submitted.

Assuming that the answers of the jury to questions 4, 5, and 6, submitted, properly determined that the motorman was negligent in failing to sound the gong after he saw the boy going toward the track, or to stop the car after he saw the boy dangerously near the track, or in the use of the brake, bell, reverser, and other appliances after seeing the boy go toward the track, yet there is no appropriate finding that such negligence was the proximate cause of the injury.

In answer to the seventh question submitted, the jury found that the defendant's servant or servants was or were "guilty of such want of ordinary care as to be the *direct or proximate* cause of the injury." In charging the jury upon that question the court said: "Those words 'direct' and 'proximate' mean about the same thing; mean the cause which naturally produced the accident, caused the accident; and you are to decide whether the servants — that is, the motorman himself or the man along with him on the same car, or both — were guilty of such want of ordinary care as caused — naturally and probably caused — the accident, in answering that question." The first part of this statement is certainly erroneous. The words "direct" and "proximate" do not "mean about the same thing." The direct cause may not be the proximate cause, and the proximate cause may not be the direct cause. Neither time nor distance is essentially a controlling element in determining whether a certain cause of an injury is the proximate cause of such injury. The distinction is stated in numerous cases in this

court, and requires no repetition. We cite only a few of the more recent. *Deisenrieter v. Kraus-Merkel M. Co.* 97 Wis. 284–288; *McFarlane v. Sullivan,* 99 Wis. 363, 364; *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 388; *Ward v. C., M. & St. P. R. Co.* 102 Wis. 219, 220; *Bigelow v. Danielson,* 102 Wis. 474; *Baxter v. C. & N. W. R. Co.* 104 Wis. 317–319.

In this case the court submitted a general verdict in connection with the special verdict. Although the objection does not appear to be preserved in the record, yet, to prevent a repetition, we call attention to the recent cases in this court condemning such practice: *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215; *Crouse v. C. & N. W. R. Co.* 102 Wis. 210; *Schaidler v. C. & N. W. R. Co.* 102 Wis. 571.

Error is assigned because the court refused to grant a nonsuit or to direct a verdict in favor of the defendant. It appears that the car moved slowly as it came down the decline on the west side of the elevated railroad bridge; that when it got to the lowest point in Second street it started up more rapidly, but as it passed up the approach to the bridge in Second street over the ravine it slowed up, and was going slow when it struck the boy. The motorman testified to the effect that he sounded the gong when under the elevated railroad bridge, which was about 125 feet west from where the car struck the boy; that the boy was walking a medium walk, east, the same way the car was going, and nearing the track all the time; that he did not slacken up for the boy, because the car was going slow,— three or four miles an hour,— and he had not turned on the current; that the boy came onto the track kind of sideways, with his back to the car; that he was about four or five feet from the car when he stepped on the track; that he thought at first that the boy was coming to get on the car; that when he saw the boy was getting too close to the car, he halloed "Look out" to him, and set the brake, and the boy then stepped onto the track; that when the brake took effect the

boy was not two feet from the car; that when he first saw the boy he was about twenty feet ahead of the car and about five or six feet from the north rail of the track; that he practiced a week previously, and some a year before, but had never run a car alone; that the current was not turned on when the car struck the boy; that from the place where he let the brake off to the place where he struck the boy was about seventy-five or one hundred feet.

The plaintiff's witness Betker testified to the effect that he saw the accident, and was six or seven rods from where it occurred; that the boy walked for two or three rods about three or four feet from the track, and then walked sideways on the track ten or fifteen feet, watching the ore train over his left shoulder; that his own attention was called to the ore train, and he first noticed the boy when he started to go sideways onto the track. The plaintiff's witness Hyland testified to the effect that his attention was called to the boy by hearing the alarm given by the witness Cain; that when the boy first stepped onto the track the car was only three or four feet from him; that the boy was then kind of backing up toward the car. The plaintiff's witness Cain testified to the effect that he was walking with the witness Hyland when he saw the boy killed; that he was then about 150 feet from him; that the boy walked from under the ore-dock trestle across over the sidewalk, and diagonally toward the street-car track, until he got within three or four feet of it, and then along by the side of it, and from two to two and one-half feet from it, until he gave the alarm; that the boy walked along the side of the track in that way ten or fifteen feet before he stepped upon the track; that the boy stepped upon the track just as he "hollered" to him, and the car was then five or six feet from the boy; that it appeared to him to be dangerous when the boy was fifteen or twenty feet from the car; that the boy was between seventy-five and eighty or ninety feet from the east end of the bridge when he was struck.

The evidence fails to show that the motorman intended to injure the boy, or that his conduct was so reckless or wanton as to evince a total disregard of the boy's safety, as defined in a case decided herewith. *Schug v. C., M. & St. P. R. Co.* 102 Wis. 523, and cases cited; *Ryan v. La Crosse City R. Co., ante,* p. 122; *Bolin v. C., St. P., M. & O. R. Co., post,* p. 333. Nevertheless, the evidence is ample to show actionable negligence on the part of the defendant.

The important question in the case is whether the deceased was not also guilty of contributory negligence. According to the undisputed evidence, he walked from under the trestle down over the sidewalk into the street until he got within from three to six feet of the track, and then, with his head turned toward his left shoulder, looking at the passing ore train, he moved partially sideways, nearer and nearer to the track, until within a few feet of the car, when apparently he heard the alarm and suddenly stepped sideways onto the track, just a few feet in front of the car, and was struck and killed. The law required that he should look in both directions for a street car before going upon the track. *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 385, 386, and cases there cited; *Cawley v. La Crosse City R. Co.* 101 Wis. 152; *White v. C. & N. W. R. Co.* 102 Wis. 489. The only excuses given are his youth, and the fact that he lived in the country and was not familiar with the movement of street-railway cars, and that his attention was at the time diverted to the ore train. He lacked two months of being fourteen years of age. He was bound to know and comprehend all the dangers which were open and obvious to a boy of ordinary understanding of his age and experience. He had frequently been in the city. If there is anything a country boy of his age would be likely to observe, it would be a street car moved by electricity. To see it move would be to know that it would be dangerous to get upon the track in front of it. It was in the middle of May, and the track

was open to observation. His attention was not forced to the ore train, nor necessarily diverted, as in some cases in this court. *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 386, and cases there cited. The ore train had no necessary connection with his movements. There was nothing to obstruct his vision. There was nothing in the time of day or the weather to prevent observation. His looking at the ore train was no more excusable than it would have been to look at the sun or a passing cloud. There was nothing complicated in the situation, calling for deliberation and judgment. It was simply a failure to use his senses at a time when the law required him to do so. The law applicable to the facts has been so often and so recently stated as not to require repetition. *Helmke v. Thilmany,* 107 Wis. 216; *Ryan v. La Crosse City R. Co., ante,* p. 122, and cases there cited. After careful consideration, and upon the undisputed evidence, we must hold that the deceased was guilty of contributory negligence.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

DODGE, J. With considerable reluctance, but unavoidably, I feel it my duty to limit my concurrence in the reversal of the judgment in this case to certain of the grounds stated in the opinion of the court. I have no doubt of the insufficiency of the special verdict, nor of the existence of prejudicial error in the charge to the jury, and fully agree with reversal predicated thereon. I, however, deprecate and feel constrained to express my disagreement with that portion of the opinion which declares, as matter of law, that the conduct of the deceased boy constitutes negligence *per se.* I deprecate it because it seems to me unnecessary. A reversal and new trial must be ordered for the specific errors, and on such new trial the evidence is more than likely to present this question in a different light. Facts now absent

may well be proved to render probable or improbable knowledge by the deceased of the existence of the street-railway track in question. His familiarity, or the reverse, with that locality, the construction of the track and street, the obscurement of the former by dust or débris, and numerous other circumstances may so vary the situation that an opinion based upon the present record can hardly aid the trial court. RYAN, C. J., in *Wells v. Perkins*, 43 Wis. 160, 166.

Further, I cannot avoid the conviction that there was ample room for reasonable and honest minds to differ upon the question whether the conduct of this boy was more careless than the conduct ordinarily to be expected of the great mass of boys of his age, intelligence, and knowledge of existing perils. Nay, I incline to the conclusion reached by the twelve citizens of Ashland county comprising the jury who, in the light of their experience and observation, declared it not so negligent. I yield, of course, to the case of *Ryan v. La Crosse City R. Co.*, *ante*, p. 122, as now the law. It is possible for a child younger than plaintiff's intestate to be guilty of negligence so obvious that the court must declare it, and conduct such as was presented and passed on in that case is such negligence. Nevertheless the rule so often stated in the cases collected in the opinion of the court and in my dissent in the *Ryan Case* remains,— that, except in extreme cases, the conduct of a child of this age should be tested by the combined experience of twelve jurymen before it should be held variant from the care ordinarily exercised by such children.

Doubtless this boy was of age and intelligence sufficient to appreciate the danger of getting in front of a rapidly moving street car, but the evidence in this case is quite conclusive that he had no knowledge in fact of the approach of this car, and that such ignorance was consistent with ordinary diligence in exercising at least his sense of hearing; for the rattle and roar of the ore train passing over the timber trestle above him

is described as sufficient to drown all ordinary sounds. The sound of the gong, which might have penetrated that clamor and warned him, was negligently omitted by the motorman.

It is true, deceased did not look to the west for an approaching car, and such is apparently the negligence ascribed to him. Not yet, however, has it been held that it is the duty of the ordinarily careful person to look for a car when he has no knowledge that he is approaching a track; and the case in hand is absolutely barren of any evidence that deceased knew there was any track in that street, or that there was anything about its construction to force that fact on his attention. On the contrary, it does appear that the street was paved with cedar blocks, excluding the probability that the track was higher than the rest of the driveway; that it was May, when the winter's accumulation of the débris of a lumber town would obscure the street; that it was dusty; and that this was at the eastern extremity of the main city, where the street-railway service was performed by a single car. He was a country boy, only infrequently in the city. He was in a peculiarly confused place in the road, just emerging from the shadows of a double and complicated railroad bridge onto the street, where there was no sidewalk, and where the ordinary paved way was much used by foot passengers; and his attention was unquestionably attracted by the novel and interesting sight of an ore train making its way over the trestle out to the ore dock,— evidently a subject of interest, for nearly all of the witnesses who were in the vicinity testify that their attention also was attracted thereby and diverted from their respective affairs. Can it be said that deceased might not, with his attention thus engrossed to his left, have clambered from the side of the railroad grade, and from among the trestle timbers, into and along this street, for 100 feet, without noticing the presence of the strips of iron a few feet to his right, consistently with the care ordinarily

exercised by such boys? If my personal observation and experience may serve to guide my judgment, such conduct is not inconsistent with what is customary. The attention of the ordinary farmer's boy, visiting the city three or four times a year, is not, as a rule, riveted to the ground on which he steps, in search of street-car tracks. The novel and interesting sights and events are ordinarily the subject of his attention. His chin is on his shoulder oftener than his eyes are on the ground. To ignore such custom, and set up different conduct as the standard of due care, is to adopt the very error embodied in the second and third questions of the special verdict, and held ground for reversal in this case. It is to substitute an ideal of the imagination in place of the care which experience informs us is ordinarily exercised, as a standard for measuring the care of those who may be injured by negligence of the operators of street railways.

WINSLOW, J. I concur in the foregoing opinion of Mr. Justice DODGE.