HENKE, Administrator, Appellant, vs. MILWAUKEE ELEC-
TRIC RAILWAY & LIGHT COMPANY, Respondent.

*December 6, 1911—January 9, 1912.*

*Street railways: Killing of boy on track: Gross negligence: Excess-
ive speed: Questions for jury: Duty to fence track: Contribu-
tory negligence: Failure to look for car: Special verdict: Form
of questions.*

1. In an action for death of a boy who was struck by an electric car
   while crossing defendant's street railway track, where a claim
   that defendant was guilty of gross negligence rested wholly on
   the alleged excessive speed of the car, it is *held* as matter of
   law that the evidence (stated in the opinion) would not have
   warranted a finding of gross negligence and that the trial
   court properly withdrew that question from the jury.
2. Sec. 1810, Stats. (1898), requiring every railroad corporation to
   erect and maintain on both sides of every portion of its road
   (depot grounds excepted) good and sufficient fences, has no ap-
   plication to the track of a street railway wholly within the
   limits of a public highway.
3. Where a boy fifteen years old, entirely familiar with the situation
   of the street railway track on a suburban highway, was struck
   and killed by an electric car while attempting to cross such
   track without looking to see whether a car was coming, al-
   though if he had looked he would have seen that the car was
   dangerously near, he was guilty of contributory negligence as
   a matter of law.
4. When it is claimed that a person was guilty of a specific omis-
   sion (in this case failure to look for a car before entering upon
   a street railway track) which can be said as a matter of law to
   constitute contributory negligence, it is not error to require
   the jury to find in their special verdict the specific concrete
   fact which will either conclusively establish or negative con-
   tributory negligence, instead of submitting the question as to
   such negligence in the ordinary general form.

APPEAL from a judgment of the circuit court for Milwau-
kee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Action brought by plaintiff, as administrator, to recover
damages for the death of his minor son, who was run over and
killed by one of defendant's cars. The defendant owned and

operated a single street-car track on the east side of what is called Howell road, which runs nearly north and south from the southern limits of the city of Milwaukee. The rails extend about four inches above the roadbed, and the ties are flush with the roadbed except in certain unfilled places, thus making that part of the highway occupied by the track impassable for vehicles. Chicago road is a public highway in the town of Lake, runs in a southeasterly direction, and diagonally intersects Howell road a short distance south of the southerly limits of the city of Milwaukee. The V-shaped piece of land between the two roads south of their intersection is irregular in outline. For a considerable distance east of the track it is hilly, but becomes more level in the vicinity of the track; and close to and along the east side of the track, about a foot and a half from the east rail, there is a ditch, and the ground between this ditch and within a foot and a half from the east rail is about four feet higher than that over which the track runs, and forms what the witnesses refer to as an embankment in front of and along the east side of the track. Upon this rise or bank, east and within about a foot of the track, there were weeds and grass which grew to a height of about five feet.

On September 6, 1909, which was shown by the evidence to have been a bright and clear day, between 9:30 and 10 o'clock a. m., the deceased, a boy fifteen years of age, and three other children, were in the fields east of Howell road picking apples. At the time in question the children were walking in a northwesterly direction along the Chicago road. The deceased, in order to cross Howell road and avoid going in a roundabout way past the intersection of the two roads, followed almost in a straight line through the V-shaped piece of land between the two roads, crossed the ditch and walked up the bank and upon the track, and was struck by a north-bound car and instantly killed. The point where the boy was run over was located by the witnesses to be about 300 feet south

of the intersection of the two roads; and the parties stipu-
lated that the distance between the north end of what is known
as the overhead bridge crossing the Chicago & Northwestern
Railway Company's track on Howell road, and the point
where the Chicago road intersects with Howell road, was
749.50 feet.

. The plaintiff set out two causes of action, one charging the
defendant with ordinary negligence, the other with gross neg-
ligence. The answer denied liability as to both causes of
action. At the close of the evidence the court refused to sub-
mit to the jury the question of gross negligence. Upon the
charge of ordinary negligence the jury found (1) that the
car which came in collision with deceased was not run at a
reasonable rate of speed from the top of the hill at the sub-
way to the point of collision; (2) that the motorman kept a
proper lookout while descending the hill to the point of col-
lision; (3) that he rang the gong upon the car and yelled to
the deceased before the collision; (4) that he attempted to
stop the car by setting the brake before the collision; (5) that
the fender on the car was not dropped at or before the col-
lision; (6) that the failure to run the car at said time and
place at a reasonable rate of speed was due to a want of ordi-
nary care on the part of the defendant; (7) that the failure
to drop the fender on the car before the collision was due to a
want of ordinary care on the part of the defendant; (8) that
the defendant was guilty of a want of ordinary care in the
operation of the car between the top of the hill on Howell
avenue and the point of collision, which was the proximate
cause of the death of deceased; (9) that the deceased entered
upon the track in front of the car without looking to the
south to ascertain whether or not a car was approaching;
(10) that just as deceased took the last step which would
bring him within the path of the car it was so near and run-
ning at such a rate of speed as to make the attempt to cross
in front obviously dangerous unless the speed of the car

should be reduced; (11) that if deceased had looked to the south just as he took the last step which brought him within the path of the car he would have seen that it was dangerously near and that a collision would probably result unless the speed of the car was reduced; (12) that the failure of the deceased to look to the south just before he entered upon the track proximately contributed to the collision; and (13) that plaintiff sustained damage in the sum of $1,800.

From a judgment entered upon such special verdict dismissing the complaint on the merits the plaintiff appealed.

For the appellant there was a brief signed by *Rubin & Lehr,* attorneys, and *W. B. Rubin* and *Horace B. Walmsley,* of counsel, and oral argument by *Mr. W. B. Rubin* and *Mr. Walmsley.*

For the respondent there was a brief by *Van Dyke, Rosecrantz, Shaw & Van Dyke,* and oral argument by *James D. Shaw.*

VINJE, J. The charge of gross negligence, in so far as there was evidence tending to sustain it, rested wholly upon the alleged excessive rate of speed of the car. If there was no credible evidence to show that it was run at a greatly excessive rate of speed, then the court properly refused to submit to the jury the question of gross negligence, otherwise not. From the intersection of the defendant's track with the Chicago & Northwestern railroad to the point of collision, a distance of about 450 feet, there was a down grade of from three and one-half to four per cent., going north. The testimony on the part of the plaintiff with reference to the speed of the car was substantially as follows: The witness Matz, a boy thirteen years old, who was in an adjoining field playing catch with another boy, said the car ran awful fast—not much faster than it was usually run there—"it was running what I would term overspeed." Emma Henke, a thirteen-year-old sister of deceased, who was standing in the Chicago

road, said the car was running fast.  The witness Gerling was driving a team north on Howell avenue.  The collision took place just as the car passed him and he estimated that its speed was sixty miles an hour.  He testified, however, to several concrete facts which, if true, utterly destroy the value of his estimate as to the speed of the car.  He said he first noticed the car at the railroad crossing, 450 feet from the point of collision; that he was driving at the rate of six miles per hour, and that he drove about 150 feet from the time he first noticed the car at the railroad crossing till the collision occurred.  If the car traveled 450 feet while he traveled 150 feet, it traveled three times as fast as he did, or eighteen miles an hour.  In another place, in giving his estimate of the relative rate of his speed with that of the car, he said that before he could go fifty feet the car went 150 feet.  The defendant's testimony was to the effect that the car ran at a speed of from fifteen to sixteen miles per hour.

The only testimony that would warrant a finding of grossly excessive speed is Gerling's estimate of sixty miles per hour. That estimate is in our judgment nullified by his other testimony as to how far the car traveled from the time he first saw it till the collision occurred, and how far he traveled during the same time.  He could easily locate the car at the railroad bridge or crossing and he could quite accurately judge the distance he traveled from the time he first saw it there till it overtook him, as well as the rate of speed at which he was driving.  It is true the evidence shows that the car ran about 300 feet after it struck deceased before it stopped.  This fact, in the absence of explanatory evidence, would raise a strong presumption of excessive speed.  *Coel v. Green Bay T. Co.,* *ante,* p. 229, 133 N. W. 23.  But it was clearly shown that the motorman practically collapsed when the collision occurred and thereafter made no effective effort to stop the car, which was running on a down grade.

From the railroad crossing to the point of intersection of

Chicago and Howell roads, for a distance of 750 feet, there were no highway or street crossings. The track was located on one side of Howell road and the rails so elevated above its surface that there was practically no travel on that portion of the road occupied by the street-car track. The situation, therefore, was such that quite a high rate of speed could properly be maintained at the place of collision. The deceased, when he suddenly emerged from behind some bushes and tall grass, was only about six feet from the track. The evidence is undisputed that the motorman then sounded the gong, yelled to him, and set the brake. At that time there was no power on, but the car was going down grade, and was only from thirty to thirty-five feet away from him. No conduct on the part of the motorman as to the operation of the car would sustain a finding of gross negligence. In our opinion, therefore, the trial court was justified in withdrawing that question from the jury.

It is strongly urged by plaintiff's counsel that the trial court erred in not submitting to the jury the question of defendant's duty to fence its track; claiming, as we understand it, that if the track had been fenced the deceased would not have been upon it. The complaint alleged that Howell road was a public highway. The answer admitted that allegation. Upon the trial the parties stipulated that defendant's track was wholly within the limits of Howell road. The track was therefore wholly within the limits of a public highway, and sec. 1810, Stats. (1898), requiring every railroad corporation to erect and maintain on both sides of every portion of its road (depot grounds excepted) good and sufficient fences, does not apply—were it otherwise applicable to defendant's track.

As will be seen from findings 9 and 12, set out in the statement of facts, the jury found that the deceased entered upon the track without looking for an approaching car, and that his failure to look proximately contributed to the collision. Findings 10 and 11 also emphasize the contributory negli-

gence of deceased.  He was a boy about fifteen years old, had been brought up in that immediate locality, and was thoroughly familiar with the situation of defendant's track at the place of the accident.  At the time he crossed from the Chicago road to the Howell road he was walking in a northwesterly direction, and there is some evidence to show that he intended to join in, or observe, the game of catch between the witness Matz and the other boy.  However that may be, there is abundant evidence to sustain the finding that he entered upon the track without looking for a car.  Such conduct, under the circumstances, was contributory negligence as a matter of law.  *Lockwood v. Belle City St. R. Co.* 92 Wis. 97, 65 N. W. 866; *Cawley v. La Crosse City R. Co.* 101 Wis. 145, 77 N. W. 179; *S. C.* 106 Wis. 239, 82 N. W. 197; *Ryan v. La Crosse City R. Co.* 108 Wis. 122, 83 N. W. 770; *Wills v. Ashland L., P. & St. R. Co.* 108 Wis. 255, 84 N. W. 998; *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, 84 N. W. 823; *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331, 85 N. W. 1036; *Goldmann v. Milwaukee E. R. & L. Co.* 123 Wis. 168, 101 N. W. 384; *Morice v. Milwaukee E. R. & L. Co.* 129 Wis. 529, 109 N. W. 567.

But it is urged it was error to submit questions 9 to 12, inclusive, permitting the jury to find the concrete facts constituting the contributory negligence, instead of submitting the usual question, namely, Was deceased guilty of a want of ordinary care that contributed to his death?  The submission of the latter question would have adequately covered the issue of contributory negligence.  But when it is claimed, as here, that the deceased was guilty of a specific omission, namely, to look for a car before entering upon the track, and where such omission can be said as a matter of law to constitute contributory negligence, then there is no error in requiring the jury to find the specific concrete fact which will either conclusively establish or negative contributory negligence.  Had the usual question been submitted, the court, upon defendant's request, would have been required to instruct the jury,

under the circumstances in this case, that if deceased entered upon the railway track without looking for a car he was guilty of contributory negligence and they must answer the question in the affirmative. Indeed, by submitting the issue in the form it was submitted, all conduct on the part of deceased, except that of a failure to look, was excluded from the consideration of the jury in determining the question of his contributory negligence. This form would seem to be favorable to plaintiff rather than otherwise. It certainly cannot be held to be prejudicial.

A number of other errors, not relating to gross negligence nor the contributory negligence of deceased, are assigned. Since the finding of contributory negligence renders them immaterial, they will not be discussed.

*By the Court.*—Judgment affirmed.